**BOLIVAR REORGANIZED SCHOOL DISTRICT NO. I, POLK COUNTY, Missouri, Plaintiff-Respondent,**

v.

**AMERICAN SURETY COMPANY OF NEW YORK, a Corporation, Defendant-Appellant.**

No. 45866.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 9, 1957.

406

Clifford B. Kimberly, Kansas City, for appellant.

Richard C. Collins, T. H. Douglas, Elvin S. Douglas, Bolivar, for respondent.

BARRETT, Commissioner.

In this action on a bid bond the obligee, Bolivar Consolidated School District No. 1, has recovered a judgment against the surety in the sum of $13,396.50, comprised of the principal sum of $8,283.20 interest, $1,794.98, and for vexatious delay and refusal to pay a penalty of $828.32 and attorneys' fees of $2,500. The school district proposed to and finally did construct three buildings, an elementary school in Polk, an elementary school in Bolivar, and an auditorium-gymnasium in Bolivar. Accordingly, in September, 1952, through its architect, Dan R. Sanford & Sons, the school board issued an advertisement and notice to contractors for sealed bids for the construction of the three buildings. The notice stated that "Bids will be taken

on the basis of a single contract for each building * * * and a combined bid may be submitted for the three buildings to be built under one contract." The notice required that "A bid guaranty shall be submitted with each bid in an amount equal to five percent (5%) of the bid," either in the form of a certified check or "approved bid bond"—the check or bond to be considered as liquidated damages "for the failure of a bidder to whom a contract is awarded to execute the contract documents and surety bond." In compliance with the notice and instructions Ozark Construction Company submitted four bids, for the elementary school at Polk, $65,555, for the elementary school in Bolivar, $125,363, for the auditorium-gymnasium, $165,664, and a combined bid for the construction of all three buildings of $335,555.55. The bids were received and opened on the appointed date, *September 25, 1952,* and on October 2, 1952, the school board adopted a resolution accepting the $165,664 bid of the Ozark Construction Company to construct the auditorium-gymnasium. Ozark Construction Company was unable to furnish a performance or construction bond, was "in a financial bind," did not sign or execute the contract, and in the following December became bankrupt. A contract for the construction of the building was awarded to another contractor and upon the trial of this case the parties stipulated that the actual cost exceeded the bid of Ozark Construction Company more than $10,000.

Upon the contractor's default the school district instituted this action against the surety, American Surety Company, on Ozark's bid bond. When Ozark's bids were submitted, instead of a separate bid bond accompanying each bid, there was but a single bond. Since the bond recited that Ozark Construction Company was about to submit "a proposal for *school buildings*" and the guaranty was "if the said proposal is accepted, the American Surety Company denied liability on the

bond. The company admits the execution of the bond but contends that it was issued and intended to cover the "combined bid" for all three buildings only and was not written or intended to cover the "single" contract or bid for the construction of the auditorium-gymnasium. In its answer the surety's defense is stated in this language, "that said bid bond was submitted with the last bid stated above which was a combined bid for all three of said buildings and had no connection with any other bid other than said combined bid," and it specifically denied executing a bond for Ozark's separate bid on the auditorium-gymnasium or for any of the bids on the *individual* or separate *buildings.* In its letter of November 20, 1952, in which it denied liability to the board, its resident manager explained its position in this language: "The bond which we furnished specified that it covered a proposal for school buildings and it accompanied a combination proposal for the construction of three school buildings. It is our information that this proposal was approximately $357,000. Your board did not accept this proposal and therefore it is our position that there is no liability under the bid bond for such proposal. It is also our position that there is no liability under this bid bond for any single building. The bond did not specify any single building. The instructions to bidders specify that each separate bid should be supported by a bid bond. We issued no bid bond supporting a proposal for the construction of any auditorium-gymnasium. When furnishing a bid bond covering a combination proposal the surety company does not contemplate that it will be subjected to the liability of guaranteeing that the bidder will enter into contract and furnish bond on some one of the buildings involved. This is because of the possibility that some building on which the bid was particularly low might be singled out and it appears that this is precisely what happened in this case." To further make plain and illuminate its defense in both the trial court and here, appellant's brief is quoted;

"the bond shows plainly that it covers a proposal for 'School Buildings' and that one proposal only is contemplated is shown by the use of the word 'proposal' in the last line" in which the surety agrees to pay the obligee damages suffered "not exceeding the sum of 5% of amount of proposal." In short, since the board did not accept the contractor's combined bid of $355,555.55 for all three buildings, it is urged that there was no award of a contract within the language and meaning of the bond, hence there was no liability for the contractor's default as to the single contract for the auditorium-gymnasium.

Upon this appeal it is urged that the court erred in admitting evidence to vary and interpret the plain, unambiguous language of the bond, and that it erred in awarding damages and attorneys' fees for vexatious delay. But the essential claim, as indicated, is that it is not liable on the bond in this action and that the fact should be declared by this court. The case was tried "upon the facts without a jury" and is reviewable here upon both the law and the evidence as in suits of an equitable nature (V.A.M.S. § 510.310), this court considering such evidence as it deems admissible and excluding from consideration evidence improperly admitted. Hussey v. Robison, Mo., 285 S.W.2d 603.

In support of its position the appellant invokes the general rules of construction, that its liability as a surety is measured and strictly limited to the terms of its contract and may not in the guise of construing or interpreting ambiguities be enlarged. City of St. Joseph ex rel. Consolidated Stone Co. v. Pfeiffer Stone Co., 224 Mo.App. 895, 26 S.W.2d 1018; Blanke Bro. Realty Co. v. American Surety Co., 297 Mo. 41, 247 S.W. 797; 72 C.J.S. Principal and Surety §§ 91, 94, pp. 569, 574. The general rules are applicable, of course, but they may not be blindly applied, ignoring the circumstances in which the contract was awarded to the bidder, Ozark, and the circumstances in which the bond was executed by the surety,

delivered, and accepted by the obligee school district.

As stated, the appellant admits the execution and delivery of the bond, but these were the attendant circumstances: The bids were received and opened in accordance with the previous notice and instructions on September 25, 1952. In conformity with instructions the bids of Ozark Construction Company and the bid bond of the American Surety Company were enclosed in a sealed, opaque envelope, and "all bids were stapled to this bond. The first document was the bid bond, * * * the next was—the first one under the bond was the Polk Elementary School, the next one was the Bolivar Elementary School and then the gymnasium, then there was a combined bid, in that order." The envelope containing the bids and the bond was submitted and delivered to the school board by the president and the secretary of Ozark Construction Company. The appellant says that it had no notice or knowledge that three separate bonds were required or that there was more than one bid, having been told that "they were going to bid on numerous buildings." The resident vice-president and general manager of the company's Kansas City branch office, who signed and mailed the bond to Ozark Construction Company in Joplin, did not testify. But the assistant manager and underwriter detailed the circumstances in which the bond was executed and mailed. Bearing in mind that the bids were to be submitted and opened at 7:30 p.m., September 25, 1952, (and the bond bears that date), the assistant manager testified that "the bond was requested by telephone, from Mr. Scott, (secretary of Ozark) on September 23rd. Now, on September 23rd a bond was executed in Kansas City, and it was mailed, with a letter of transmittal, to the Ozark Construction Company at Joplin, * * * with instructions that it not be used, or filed, nor that the bid be filed with that bond until he was later authorized by phone to proceed with the filing of the bond. Then on September

25th Mr. Evans (the resident vice-president) then secured authority for the execution of this bond from New York, and phoned Ozark Construction Company and authorized them to proceed with the use of the bond, and at that time also told them that they must sign the application and send it in to us, and that application was dated September 23rd, the same day as the letter." As indicated in this testimony, when the branch office executed and mailed the bond to its principal it did not have a copy of the board's advertisement, notice and instructions to bidders. When the formal application for a bond was received on September 26th (the day after the submission and opening of bids), it recited a "bid or contract price" of $325,000 which, obviously, was not the combined bid of $355,555.55 or the "approximately $357,-000.00." It was not until "some time between September 25th and October 7th," after being notified that Ozark had been awarded the single contract to construct the auditorium-gymnasium, that the branch office learned, by going out to the architect's office in Kansas City and reading "copies of this proposal and letting down here," that there were to be, as the assistant manager said, three separate bids and bonds and a combined bid and bond.

Of course, the school board had no knowledge of the circumstances in which the bond had been executed and needless to say did not know what had gone on between the surety and the contractor. In this connection, considering only the physical bond upon which the appellant places so much reliance, true enough it recites "a proposal for School Buildings" and "if the said proposal is accepted," but the buildings or the proposal are not otherwise described or identified and no specific sum of money is mentioned, in the space for "Dollars ($——)" following "5% of amount of proposal" there is an unfilled blank. Except for the language relied upon and the interpretation the appellant attributes to it there is nothing in the bond to specifically indicate that it was conditional in any respect or that it was to become effective only in the event of its principal, Ozark, being awarded the combined bid for all three buildings.

■■ Here the auxiliary rules of construction are of some force. As argued, the obligation of the bond may not in the guise of construction be enlarged beyond the plain terms and stipulations, but the appellant executed the bond and it is to be construed most favorably to the obligee and against the surety (Massachusetts Bonding & Ins. Co. v. Feutz, 8 Cir., 182 F.2d 752; Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162, 76 A.L.R. 931), and it is to be given the effect and office the parties intended. Camdenton Consolidated School Dist., etc. v. New York Cas. Co., 340 Mo. 1070, 104 S.W.2d 319. Even though the surety had not seen the invitations and instructions to bidders or the contractor's proposed bids, the bond was nevertheless executed with regard to those documents and they may not be ignored. Union State Bank v. American Surety Co., 324 Mo. 438, 23 S.W. 2d 1038. The appellant executed the bond and mailed it to its principal, the contractor, with authority to use it with the consequence that it was delivered and there was nothing on the face of the bond or in the circumstances to preclude the obligee's innocent acceptance of it. North St. Louis Planing Mill Co. v. Essex, 157 Mo.App. 18, 137 S.W. 295; Union State Bank v. American Surety Co., supra.

■■ Likewise here, there is some analogy in the instances of sureties executing bonds in blank and in the cases in which the principal, unknown to the obligee, has perpetrated a fraud upon the surety. The principal in the bond, Ozark Construction Company, was not a party to this suit and there was neither claim nor evidence of mistake on its part. Compare: State of Connecticut v. F. H. McGraw & Co., D.C., 41 F.Supp. 369; Annotations, 52 A.L.R.2d

792 and 71 A.L.R. 1278. In general, the obligation of the surety is measured and limited by the principal's contract and obligation. 72 C.J.S. Principal & Surety § 92, p. 572; 50 Am.Jur., Sec. 140, p. 997. Entrusting the bond to its principal, in the absence of plain stipulations and conditions, was indeed comparable to executing a bond in blank and authorizing the principal to fill in the blanks. J. R. Watkins Co. v. Keeney, 52 N.D. 280, 201 N.W. 833, 37 A.L.R. 1389; Annotation, 48 A.L.R. 741; 9 Appleman, Insurance, Sec. 5305, p. 113; Pingrey, Suretyship & Guaranty, Sec. 56, p. 66. In these circumstances, particularly the circumstances in which the bond was executed, delivered, and accepted, the auxiliary equity maxim is applicable; where the prejudicial situation has resulted from the wrongful conduct of a third person the injurious consequences must be borne by the party whose conduct made the situation possible, here the surety, not the school district. J. R. Watkins Co. v. Lankford, 363 Mo. 1046, 256 S.W.2d 788; 19 Am.Jur., Secs. 483, 484, p. 335.

There is more than an analogy in Greene County to use of Sims v. Wilhite, 29 Mo. App. 459. That case was a suit on a dramshop bond in which it was alleged that the dramshop keeper, the principal, was guilty of twenty-two specific violations of the dramshop law and it was sought to recover the sum of $50 for each of the twenty-two violations. Instead of executing two bonds as the statutes required, one for $2,000 and another for $500, the principals and the sureties executed a single bond for $2,500. The sureties offered the defense that the penalty of the bond was in excess of that provided by statute and was therefore void. Of this defense the court said, "It is unquestionably the more regular method to take from the dramshop keeper two separate bonds, with the penalties and conditions fixed by the statute, respectively, which, in case of breach of conditions, will avoid all complications. But as the defendant principals in this case were legally bound to give bonds in the penalty of twenty-five hundred

dollars before they could obtain a license, we cannot well perceive how either they or their sureties can complain, because they are required to execute one bond only instead of two, provided the penalty was not in excess of the aggregate penalties required by law."

■ Ozark having been duly awarded the contract to construct the auditorium-gymnasium, it was a breach of its bid bond to fail to execute a contract to construct the building or to fail to execute and furnish an acceptable performance bond. 10 Appleman, Insurance, Sec. 5831, p. 44. In the noted circumstances the trial court did not err in accordingly imposing liability upon the surety on its bid bond. Greene County to use of Sims v. Wilhite, supra; Massachusetts Bonding & Ins. Co. v. Feutz, supra; Camdenton Consolidated School Dist., etc. v. New York Casualty Co., supra; Union State Bank v. American Surety Co., supra.

■ There was some inconsistency in the surety's position, initially; there was considerable delay in its plainly denying liability, and there was an unsuccessful but cooperative effort to secure timely financial assistance for the principal before it denied liability. Nevertheless, the circumstances are not such as to plainly warrant the imposition of the penalties of ten per cent damages and attorneys' fees for "vexatious refusal to pay such loss." V.A.M.S. § 375.-420. While some unfavorable inferences are permissible from some of its conduct, the circumstances do not plainly indicate that the surety's refusal to pay was willful or without reasonable basis. Adams v. State Auto Ins. Ass'n of Des Moines, Mo.App., 265 S.W.2d 738; Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11; Ewing v. Dubuque Fire & Marine Ins. Co., Mo.App., 237 S.W.2d 498. It is not necessary to reconcile or indicate the distinctions in the cases in which it has been held to be for a jury to say whether the refusal to pay was vexatious within the meaning of the statute. Thomas v. Metropolitan Life Ins.

Co., 230 Mo.App. 206, 89 S.W.2d 590. Cases involving bid bonds are rare and while the fact is not necessarily determinative, there are no plainly comparable cases and in view of what may be the general practice of a separate bid bond for each bid, the appellant may have reasonably entertained a difference of opinion upon the facts as to coverage even though the opinion was an "honest error" in judgment (Willis v. American National Life Ins. Co., Mo.App., 287 S.W.2d 98), and it may not be said that there was not an "open question" of law and "an honest difference of opinion as to liability." World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co., 8 Cir., 169 F.2d 826, 833, 4 A.L.R.2d 523; Young v. New York Life Ins. Co., Mo.App., 221 S.W.2d 843. Accordingly, again reviewing the case "upon both the law and the evidence" (V.A.M.S. § 510.310) and giving "such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law" (V.A.M.S. § 512.160, subd. 3), the two items, $828.32 "penalty" and $2,500.00 attorneys' fees, should be stricken from the judgment.

Therefore, the judgment is remanded with directions to enter judgment for the respondent school district, as of the date of the original judgment, for the sum of $10,078.18 (this being the debt of $8,283.20 and $1,794.98 interest to the date of the judgment), the same to bear interest from date until paid at six per cent per annum. Camdenton Consolidated School Dist., etc. v. New York Casualty Co., 340 Mo. loc. cit. 1093, 104 S.W.2d loc. cit. 332.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.