FRANK POWELL LUMBER
CO., Plaintiff–Appellant,

v.

FEDERAL INSURANCE CO.,
Defendant–Respondent.

No. 17298.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 21, 1991.

Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla and Joseph W. Rigler, Williams, Robinson, Turley, Crump & White, Salem, for plaintiff-appellant.

Robin E. Fulton, Schnapp, Graham, Reid & Fulton, Fredericktown, for defendant-respondent.

PARRISH, Judge.

Appellant brought an action for damages on a surety bond issued by respondent. Appellant sought payment for the value of goods and merchandise sold and used in the construction of improvements on the property of First Methodist Church of Rolla, Missouri (Owner). The contractor for the construction project was Brockmiller Construction, Inc. (Contractor). The goods and merchandise for which appellant seeks payment were sold to a subcontractor. The trial court found for respondent. This court affirms.

Contractor entered into an agreement with Owner to construct an addition to a building on Owner's property. Pursuant to the terms of the agreement, Contractor provided a surety bond "to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract." The surety bond was issued by respondent.

The subcontractor that incurred the indebtedness for which appellant seeks recovery from respondent was J.B. McCarty Plumbing & Heating Co. (McCarty). The value of the goods and merchandise that were purchased by McCarty from appellant—$381.39—is uncontested. The last date on which the appellant sold materials to McCarty was November 22, 1988. Thereafter, McCarty refused to pay for the goods and merchandise it had purchased from appellant and filed for bankruptcy.

Appellant gave notice to Owner by letter dated February 10, 1989, of its claim against McCarty. In that letter, appellant stated, "It is my understanding that you will turn these invoices over to your attorney who will seek relief from Brockmiller Construction Co. under their performance bond." Appellant's attorney first notified Contractor's attorney of appellant's claim by letter dated March 1, 1989.

The terms and conditions of the surety bond that respondent issued, and upon which appellant seeks recovery, include:

4. The Surety shall have no obligation to Claimants under this bond until:

. . . . .

4.2 Claimants who do not have a direct contract with the Contractor:

.1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5. If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

The date of the letter appellant sent to Owner, February 10, 1989, was within 90

days next following November 22, 1988, the date of the last sale of goods and merchandise to McCarty. The date of the letter from appellant's attorney to Contractor's attorney, March 1, 1989, is more than 90 days after the last sale of goods and merchandise by appellant to McCarty.

Appellant presents one point on appeal. It is directed to the 90–day notice requirement in the surety bond. Appellant contends that the trial court erred in not finding that the requirement for a subcontractor to give a 90–day written notice to Contractor with a copy to Owner was void as violating public policy. Appellant claims that the notice provision "attempts to create a private statute of limitations," and, therefore, that judgment should have been entered for appellant in the amount of appellant's claim.

Appellant takes two approaches in its challenge to the enforceability of the notice requirement. One is directed to the purpose for having such a bond. The second is directed to the policy of this state as codified by § 431.030.[1]

Appellant argues that the "sole purpose" of a surety bond is to protect third-party beneficiaries. Appellant concludes, therefore, that:

A contractor or materialman may rely on a six month mechanic's lien right, about which they are deemed to know, or a ten year statute of limitation for suit on account, about which they are also deemed to know, only to find all their rights destroyed because the owner secretly went and purchased a payment bond with a ninety day notice provision.

Appellant's premise that "[t]he sole purpose of the Payment Bond is to protect third party beneficiaries" is not sound. Further, the fact that the type of debt appellant seeks to collect by this action is protected by mechanics' and materialmen's lien statutes is irrelevant. The fact that an owner obtained, secretly or otherwise, a payment bond with a 90–day notice provision does not destroy or in any way affect a contractor's or materialman's rights under the mechanics' and materialmen's lien statutes.[2]

■ Appellant mischaracterizes the purpose of the surety bond that was provided. Its purpose was to protect the owner of the property where the construction was performed. Any benefits that materialmen or other third-party beneficiaries received as a result of the surety bond were incidental and were available only in accordance with its terms. The purpose of a surety bond such as the one in this case was discussed in *National Gypsum Co. v. Travelers Indemnity Co.*, 417 So.2d 254 (Fla.1982). The Florida court upheld a 90–day notice requirement ("within 90 days of the last delivery") in a surety bond similar to this one. In upholding the notice requirement, the court stated, at l.c. 256, "Pavarini [the contractor] secured the bond for the benefit of the owner; protecting materialmen, such as National Gypsum, was not the main purpose."

The Supreme Court of this state has also alluded to the incidental nature of a third-party beneficiary's rights arising from a surety bond. In *La Salle Iron Works, Inc. v. Largen*, 410 S.W.2d 87 (Mo. banc 1966), a material supplier sought recovery against both the principal contractor and his surety for the value of material furnished in the building of a church school. The court discussed the effect that express terms of a surety bond had on the third-party beneficiary. At l.c. 91, quoting from *Corbin on*

1. References to statutes are to RSMo 1986 unless otherwise stated.

2. § 429.010 gives subcontractors who furnish materials "for any building, erection or improvements upon land" the right to maintain a lien for those materials "upon such building, erection or improvements, and upon the land belonging to such owner ... on which the same are situated." The lien is available "upon complying with the provisions of sections 429.010 to 429.340." § 429.100 requires subcontractors "who may wish to avail [themselves] of the benefit of the provisions of sections 429.010 to 429.340" to "give ten days' notice before the filing of the lien ... to the owner, owners or agent, or either of them" of the claim, its amount and "from whom the same is due." § 429.080 requires the lien to be filed "within six months after the indebtedness shall have accrued."

*Contracts*, Vol. 4, Ch. 43, § 798, pp. 163–164, the court stated:

" * * * the third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit.' We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?"

The court added, "If the surety wishes to exclude this type of liability it may consider such a bond as is shown in *Bourrett v. W.M. Bride Construction Company*, 248 Iowa 1080, 84 N.W.2d 4 [1957], where all rights of action by any one except the named obligee in the bond were expressly excluded." [3]

■ Missouri law is consistent with the holdings of the Florida court in *National Gypsum Co.* and the Iowa court in *Bourrett*. Liability of a surety is limited to the terms and conditions stated in the bond. As was stated in *Bolivar Reorganized School Dist. No. 1 v. American Sur. Co. of New York*, 307 S.W.2d 405, 409 (Mo.1957), "[T]he obligation of the bond may not in the guise of construction be enlarged beyond the plain terms and stipulations,...." And, with respect to contracts generally, in *Executive Hills Home Builders v. Whitley*, 770 S.W.2d 507, 508 (Mo.App.1989), "A

court cannot make a contract for the parties that they did not make for themselves, or impose upon the parties obligations they have not assumed."

A similar result to that in *National Gypsum Co.* was reached in *Reorganized School Dist. R–3 v. L.D. Compton Const. Co.*, 483 S.W.2d 674 (Mo.App.1972). That case involved a public construction project to which § 107.170, RSMo 1969,[4] applied. In compliance with that statute, the contractor provided a surety bond. Its terms included a requirement that unless a subcontractor claimant gave written notice to the owner or the surety within 90 days of performing the last work on the project, "[n]o suit or action shall be commenced." *Id.* at 676. The court upheld the validity of the notice requirement and its enforceability finding that "[t]he contracting parties had the authority to incorporate such a provision in the instrument as long as it was reasonable and did not thwart the purpose and intent of the statute." *Id.*

Appellant argues that the holding in *Compton* is not applicable to the facts in this case because it involved a public project to which § 107.170 applied. Appellant contends that, in *Compton*, "a payment bond was required BY STATUTE, and the existence of which each contractor is assumed to know." Appellant contrasts those circumstances with circumstances in private projects in which "the contractor has no way of finding out if a payment bond even exists, and no means by which to discover the notice provisions thereof."

The bond was acquired by the principal contractor. The "obligee" was the owner of certain real estate for whom the contractor was constructing a building. The action against the surety was brought by a subcontractor. The court affirmed the trial court's order granting surety's motion to dismiss the subcontractor's petition as to the surety. 84 N.W.2d at 5.

**3.** *Bourrett v. W.M. Bride Construction Co., Inc.*, 248 Iowa 1080, 84 N.W.2d 4 (1957), did not involve a question of the enforceability of a notice requirement. The question it presented was whether a surety bond could exclude third-party beneficiary subcontractors from its coverage. In holding that liability to such third-party beneficiaries could be excluded, the Iowa court said, "The liability of a surety is to be determined by the specified conditions of the bond and cannot be enlarged beyond them." 84 N.W.2d at 6. The surety bond in *Bourrett* included the provision:

Sixth: That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the Obligee herein named; ...

**4.** § 107.170, RSMo 1986, is unchanged from § 107.170, RSMo 1969. It requires payment bonds to be provided for public projects. In *Compton*, the court declared, at l.c. 676, that § 107.170 is designed to provide laborers and materialmen the same measure of protection as that afforded by the mechanics' lien law in the private sector.

Appellant's inference that an owner would benefit from purchasing a surety bond, but that contractors or materialmen would be adversely affected by an owner doing so, is not persuasive. An owner of a private project has the legal obligation to pay its contractor. Additionally, if the contractor does not pay the subcontractors or materialmen, those persons may file mechanics' and materialmen's liens against the owner's property. Upon such liens being perfected, the owner is the one who ultimately pays the claims the liens represent. Under those circumstances, an owner, in effect, pays double for the materials *or labor represented by the liens.*

It is in the best interests of an owner to assure that mechanics and materialmen are aware that a surety bond is provided on a private project and that the mechanics and materialmen know of notice requirements of the bond, if any. This enables an owner to receive benefits from the surety bond in that the claims paid under its terms do not result in the assertion of mechanics' and materialmen's liens which, when perfected, fall upon the owner to satisfy. Likewise, it behooves subcontractors and materialmen to inquire of an owner about the existence of a surety bond and its terms in order that they may satisfy *the conditions imposed by the bond.* By doing so the subcontractors and materialmen can collect debts owed them by defaulting subcontractors without having to pursue the slow, and sometimes expensive, mechanics' and materialmen's lien process required in order to collect the debts from the owner.

The holding in *Compton* is applicable to this case, notwithstanding that *Compton* involved a public project and this case involves a private project. The court, in *Compton,* stated that the requirement of § 107.170 that payment bonds be provided on public projects is intended "to afford laborers and materialmen the same measure *of protection in public construction as* that afforded by the mechanic's lien law in the private sector." 483 S.W.2d at 676. Here, the surety bond was provided to protect Owner from incurring liability that would result if mechanics' and materialmen's liens were filed. The same protection is afforded here as was afforded by the bond in *Compton*—protection against subcontractors who default on their debts. The difference, however, is that in *Compton* it was the laborers and materialmen who benefited; whereas here, it is Owner who would benefit.

In the Florida case, *National Gypsum Co v. Travelers Indemnity Co, supra,* the court summed up the circumstances applicable to the materialman, National Gypsum Co., as follows, "We see no reason to allow National Gypsum to enjoy the benefits of the bond without bearing its burdens as well." 417 So.2d at 256. That characterization is consistent with Missouri law. This court sees no reason to allow appellant to enjoy the benefits of the surety bond that was provided as protection for Owner without bearing its burdens as well. As stated in *La Salle,* 410 S.W.2d at 91, the question to be answered is, "Did the surety promise to pay money to the plaintiff?" Here, it did, upon notice being given as required by the terms of the bond. And, as explained in *Executive Hills Home Builders,* 770 S.W.2d at 508, "A court cannot make a contract for the parties that they did not make for themselves, or impose upon the parties obligations they have not assumed." Respondent did not assume an obligation to appellant absent appellant providing the notice required by the terms of the bond. Appellant failed to provide that notice to respondent. By the terms of the bond, appellant is not entitled to recovery from respondent. The question that remains is, does § 431.030 restrict the rights of parties so that a bond may not require, by its "plain terms and stipulations," that a subcontractor give a notice more restrictive than that required by the mechanics' and materialmen's lien statutes?

Appellant points to §§ 431.030 and 516.110. Section 516.110 is the ten-year statute of limitation that applies to, among other things, actions "upon any writing, whether sealed or unsealed, for the payment of money." It is the statute

of limitation that is applicable to actions on surety bonds. *See Miner v. Howard,* 93 Mo.App. 569, 67 S.W. 692 (1902). Section 431.030 provides:

All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void.

Appellant contends that the notice requirement in the surety bond issued by respondent tends to limit the time in which an action may be brought and, therefore, by reason of § 431.030, is not enforceable.

Section 431.030 applies to contracts or agreements that "directly or indirectly limit or tend to limit the time in which any suit or action may be instituted." In contending that the notice provision in the surety bond in this case is invalid and unenforceable due to § 431.030, appellant and its amicus rely upon *City of Kansas City v. St. Paul Fire & Marine Ins. Co.,* 639 S.W.2d 903 (Mo.App.1982), and *Lumbermen's Mutual Casualty Co. v. Norris Grain Co.,* 343 F.2d 670 (8th Cir.1965). This court finds those cases to be unpersuasive in that the facts in each are distinguishable from the facts in this case. *St. Paul Fire & Marine Ins. Co.* involved a requirement in the Kansas City Charter that suits on the bond must be commenced within three months of the completion of the contract and acceptance by the city. 639 S.W.2d at 903. The court held that the city charter provision was inconsistent with the applicable state statute, § 516.110, RSMo 1978, the ten-year statute of limitation. For that reason, the court found that "[t]he charter provision cannot stand." 639 S.W.2d at 905.

The *St. Paul Fire & Marine Ins. Co.* case is of no assistance to appellant. Not only is it limited to a determination that a particular city ordinance was contrary to state constitutional provisions, but its facts differ from those in this case. Here, the time requirement applies to when the notice must be given in order for a claim to be covered under the surety bond. The terms of the surety bond in this case do not attempt to limit when a suit may be brought. The challenged terms of this surety bond involve only when a third-party beneficiary of the contract must give notice of a claim in order for the claim to be covered by the terms of the bond. *St. Paul Fire & Marine Ins. Co.* applied to the time in which a suit was required to be brought. *Lumbermen's Mutual Casualty Co.* is likewise inapplicable. That case also involved a limitation contained in an insurance policy that restricted when suit could be brought. The limitation in the policy was shorter than the applicable statute of limitation.

■ In this case, the 90–day period of limitation did not affect when suit could be brought on the surety bond. Rather, it determined what notice was required in order for claimants who had no direct contract with Contractor to have coverage under the terms of the surety bond. The 90–day notice provision in the surety bond did not limit, or tend to limit, the time in which a suit or action could be instituted. Likewise, as observed, *supra,* the notice requirement did not affect any remedy available by reason of Missouri's mechanics' and materialmen's lien statutes. Section 431.030 is not applicable to the facts of this case.

This court finds no error on the part of the trial court. The judgment is affirmed.

MONTGOMERY, J., concurs.

PREWITT, P.J., concurs in separate opinion filed.

CROW, J., recused.

PREWITT, Presiding Judge, concurring.

I agree with the reasoning in the majority opinion. I do not, however, agree with the result of *Reorganized School Dist. R–3 v. L.D. Compton Const. Co.,* 483 S.W.2d 674 (Mo.App.1972). I think the provisions in the bond there were inconsistent with the statute which required the bond. However, in the present case as there is no

statutory requirement for the bond, the result is correct.