CITY OF KANSAS CITY, Missouri,
ex rel. Michael W. JENNINGS,
Respondent/Appellant,

v.

INTEGON INDEMNITY COR-
PORATION, et al., Appel-
lants/Respondents.

Nos. WD 45810, with 45844.

Missouri Court of Appeals,
Western District.

March 30, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1993.

Application to Transfer Denied
Aug. 17, 1993.

John M. Cave, II, John M. Cave, II, P.C.,
Kansas City, for appellants.

Kip D. Richards, Walters Bender &
Strohbehn, P.C., Kansas City, for respon-
dents.

Before BERREY, P.J., and ULRICH and
SMART, JJ.

SMART, Judge.

This case presents an action by a laborer
for unpaid wages brought against a gener-
al contractor and a surety for services ren-
dered on two public works construction
projects. Both appellant, Michael W. Jen-
nings, and respondents, Integon Indemnity
Corporation ("Integon"), George A. Jordon

and Aaron K. Jordon (statutory trustees for JoCo Construction Company), appeal from the trial court's judgment awarding $76,343.95[1] to Jennings.

Plaintiff Jennings accepted employment with JoCo Construction Company Inc. ("JoCo") as a common laborer in May, 1986. He agreed to work for JoCo for a wage rate of $5.00 per hour. JoCo was awarded two public works contracts by the City of Kansas City and Jennings provided labor on both projects. Integon became the surety for JoCo on the public works projects by issuing payment and performance bonds and promising to pay the debts incurred but unpaid by JoCo on the bonded projects. Pursuant to §§ 290.210–.340, RSMo 1986,[2] JoCo was required to pay laborers on public works projects not less than the prevailing wage rate determined by the Missouri Department of Labor and Industrial Relations. JoCo was required to pay Jennings a "prevailing wage" of not less than $16.62 for each hour of straight time and $24.93 for each hour of overtime as embodied in the two public works contracts and the public contractor's bonds executed by and between the City of Kansas City, JoCo and Integon.

During his employment with JoCo, Jennings kept track of the number of hours he worked each day. He did this by writing the times he worked on scraps of paper. He later transferred this information to a running tabulation kept on a piece of notebook paper. Jennings would rewrite the tabulation from time to time when the notebook paper became dirty or greasy. This occurred on two or three occasions. In total, Jennings worked 1,124.5 hours of

straight-time and 248.5 hours of overtime. Thus, Jennings was entitled to receive a total gross amount of $24,884.37.[3] However, JoCo only paid Jennings $6,417.33 for the rendition of his services.[4]

JoCo's corporate charter was forfeited on April 21, 1986, for failure to pay franchise taxes. Jennings originally filed suit against George Jordon, Aaron Jordon and Gerald Covert,[5] the statutory trustees for JoCo, on May 4, 1987 for the unpaid wages. Jennings voluntarily dismissed that suit on March 28, 1990. The action was subsequently refiled against the same three defendants plus an additional defendant, Integon (the surety), on September 5, 1990. There is no dispute that the claims against the original defendants were preserved since the subsequent suit was commenced within one year of Jennings' voluntary dismissal. Section 516.230. On September 30 and October 1, 1991, the case was tried to a jury. The jury awarded Jennings $18,467.04, which was calculated by subtracting the amount JoCo had already paid Jennings, $6,417.33, from the total amount of wages that Jennings was entitled to receive, $24,884.37. Pursuant to § 290.300, the trial court doubled the amount of the jury's award and awarded Jennings reasonable attorneys' fees and prejudgment interest. The court entered judgment in favor of Jennings and against each and every defendant in the total amount of $76,343.95. Both appellant and respondents appeal from this judgment. Integon's three points on appeal will be addressed first, followed by review of Jennings single point on appeal.

1. This award consisted of the following: (1) $18,467.04 awarded by the jury for unpaid wages, (2) $18,467.04 ordered by the trial judge in accordance with the statutory doubling penalty contained in § 290.300, RSMo 1986, (3) prejudgment interest of $7,986.87 and (4) statutory attorneys' fees of $31,423.00.

2. All statutory references are to the 1986 version of the Revised Statutes of Missouri.

3. This amount consisted of $18,689.19 in straight time and $6,195.18 in overtime.

4. In October, 1986, Jennings discovered that he was entitled to receive a prevailing wage rate of

$16.62 per hour. Jennings discovered that fact when George Jordon told him: "If any city inspectors come out there, tell them that you're making sixteen dollars and sixty-two cents an hour." Shortly thereafter, Jennings asked that his rate of pay be increased to the prevailing wage. JoCo refused and in December, 1986, Jennings ceased working for JoCo.

5. Defendant Covert failed to answer the petition filed against him. Accordingly, upon motion by Jennings, the trial court entered a judgment by default against Defendant Covert.

## Statute of Limitations

■ Integon argues that the trial court erred in submitting this case to the jury because the suit was barred by the two year statute of limitations period set forth in § 516.140. Integon urges that § 516.140 limits the time within which suit for unpaid minimum wages must be filed to two years from the accrual of the cause of action. The suit naming Integon as a party defendant was filed more than three years after the accrual of plaintiff's cause of action. In response to Integon's contention, Jennings suggests that the ten year statute of limitations should govern his action against Integon. Section 516.110 sets forth that "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property" must be commenced within ten years. Jennings argues his claim against Integon is on the payment bond, not under the prevailing wage rate statute, and that it is therefore governed by the ten year statute of limitations period.

We do not reach the issue of whether Jennings' action was commenced under the statutory provision or on the bond. The only issue we resolve is whether the two year statute of limitations period governs Jennings' cause of action.[6] We need not reach the nature of Jennings claim against Integon because we conclude that claims brought under the prevailing wage rate statute, § 290.300, are not governed by the two year statute of limitations. If the action was brought on the bond, the ten year statute would apply. *See Frank Powell Lumber Co. v. Fed. Ins. Co.,* 817 S.W.2d 648, 652–53 (Mo.App.1991). Section 516.-140 governs what actions must be commenced within two years and includes:

> An action for libel, slander, assault, battery, false imprisonment, criminal conversation, malicious prosecution or actions brought under section 290.140, RSMo. *An action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation,* and for the recovery of any amount under and by virtue of the provisions of the Fair Labor Standards Act of 1938 and amendments thereto....

(emphasis added). Integon argues § 516.-140 applies to Jennings' claim since it is for "unpaid minimum wages." However, Integon cites no Missouri case law or other authority to support this contention. Likewise, we have found no cases supporting Integon's claim.

We believe that the highlighted portion of § 516.140 dealing with unpaid minimum wages does not apply to actions for prevailing wage rates on public works projects as provided in §§ 290.210–.340. We conclude that the highlighted language of § 516.140 refers solely to actions by employees against employers for failure to pay the federally promulgated minimum wage and overtime compensation pursuant to the Fair Labor Standards Act of 1938. We do not believe the legislature intended to include suits by laborers against contractors for "prevailing wages," established by state law. Section 516.140 discusses actions for "minimum wages" as defined in the Fair Labor Standards Act of 1938, not "prevailing wages" as defined in § 290.-210(5). This limitation statute does not specifically state that it applies to the prevailing wage rate statutes. However, it does specifically provide coverage for § 290.140. It also unquestionably sets forth its applicability to the Fair Labor Standards Act of 1938. We conclude that if the legislature would have intended for § 516.140 to govern actions brought under §§ 290.210–.340, it would have specifically provided for such coverage when the statute was amended in 1986. We hold that the two year limitation statute, § 516.140,

---

**6.** It is unclear from the pleadings whether Jennings brought his cause of action against Integon under § 290.300 or whether suit was instigated on the bond. This distinction, however, is not critical in resolving Integon's first point because we conclude the two year limitation statute does not apply under either circumstance. Our determination focuses solely on whether the two year limitation period provided in § 516.110 bars Jennings' claim against Integon and this decision does not resolve which limitation period governs this case.

does not apply to actions for prevailing wages. Thus, the trial court did not err in finding the statute inapplicable to Jennings' claim. Point I is denied.

### Punitive Doubling Provision

Next, Integon argues that the trial court erred in doubling the jury's award of unpaid wages and in awarding attorneys' fees in accordance with § 290.300. Integon contends that it was not liable under the statute and that the only possible liability of Integon is liability for wages not paid at the contract rate.

■ General principles of surety law dictate that the liability of a surety is coextensive with that of its principal. *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 561 (Mo.App.1991). Thus, the rights and liabilities of a surety are measured by those of the principal, absent an agreement to the contrary. *National Union Fire Ins. Co. v. D & L Constr. Co.*, 353 F.2d 169, 175 (8th Cir.1965). Integon entered into two separate surety contracts guaranteeing payment on two public works projects in the amounts of $411,762.85 and $110,872.76. The bond contracts stipulated that Integon's liability could not exceed these amounts. Both surety contracts contained the following language:

> The party of the second part [Integon] hereby guarantees that the said party of the first part [JoCo] will well and truly perform the covenants hereinbefore contained and will pay for the work and labor of all laborers ... and if the cost of such work and labor ... is not paid in full by the said party of the first part, then the said party of the second party hereby agrees to pay for said work and labor ... and this provision shall entitle any and all laborers ... who may do work ... to sue and recover from said second party the amount due or unpaid to them or either of them, by said first party.

> .   .   .   .   .

> It is further stipulated that not less than the prevailing hourly rate of wages as found by the Department of Labor and Industrial Relations of the State of Missouri or determined by the court on appeal shall be paid to all workmen performing work under this contract.

■ Jennings sued both Integon and the statutory trustees for JoCo. The trial court entered judgment for Jennings and against each defendant in the amount of $76,343.95, which included the wages owed to Jennings, the statutory doubling penalty, interest and reasonable attorneys' fees. In the instant case the principal (the statutory trustees for JoCo) incurred liability of $76,343.95. Integon, as the surety, is liable up to but not more than the amount of the principal's liability. Additionally, the $76,-343.95 judgment is within the confines of the dollar amounts enumerated in the bond contracts. Integon specifically stipulated in the agreement that the prevailing wage rate should be paid to all workmen by the principal, JoCo. Unfortunately, JoCo failed to pay its laborers the prevailing wage rate. In fact, testimony revealed that JoCo intentionally tried to conceal this fact from its laborers and city inspectors. JoCo incurred a penalty for its conduct in Jennings' suit and Integon expressly agreed to guarantee payment of prevailing wages to JoCo's laborers. Integon has not cited any Missouri case law or directed this court to any other authority for its contention that it is not liable for the full amount of the judgment. Accordingly, we hold that the trial court did not err in entering judgment against Integon in the amount of $76,-343.95. Point II is denied.

### Admission of Exhibits

■ Integon's last point on appeal suggests that the trial court erred in admitting exhibits 24, 25 and 34. Exhibit 24 was a copy of Jennings handwritten time sheets containing the number of hours he worked for JoCo. Integon argues that exhibit 24 is hearsay and not within any exception to the hearsay rule. Integon further argues the exhibit is not the best evidence of its contents nor admissible as secondary evidence. Exhibits 25 and 34 contained computations based solely upon the information contained in exhibit 24 and Integon argues that these exhibits are also inadmissible.

We hold the trial court did not err in overruling Integon's hearsay objection to exhibit 24 because Jennings properly presented the exhibit under the past recollection recorded exception to the hearsay rule. Each day after Jennings left work he would record his hours for that day. He kept a running tabulation of his hours. From time to time his paper would become greasy and dirty. Thus, on two or three occasions he rewrote the hours onto a new sheet of paper. The tabulation evidenced the total number of hours Jennings worked for Integon. It was made contemporaneously with the work performed each day.[7] The notes were in Jennings handwriting and were recorded at the end of each working day. A proper foundation for the admission of the exhibit was laid through Jennings' testimony. Thus the trial court did not err in overruling the hearsay objection and admitting exhibit 24 into evidence under the exception providing for past recollection recorded. *See S & H Concrete Constr. Co. v. Genova*, 384 S.W.2d 816 (Mo.App.1964); *Mueller v. Rock*, 249 S.W. 435 (Mo.App.1923).

■ Integon further contends that exhibit 24 was not properly admitted into evidence because it was not the best evidence of its contents. Integon's argument is not that the exhibit is inadmissible because it is a photocopy of the original, but that Jennings intentionally destroyed the original pieces of paper where he had recorded his hours, constituting bad faith. Jennings testified that he came home from work each day and copied down his hours for that day. As stated earlier, he recopied the list several times. Jennings further testified that he entrusted his original notes to his first attorney of record who inadvertently misplaced or lost the records.

■ The best evidence rule promotes the production of primary evidence. *Schnucks Twenty–Five, Inc. v. Bettendorf*, 595 S.W.2d 279, 283 (Mo.App.1979). However,

the rule does not prohibit the introduction of secondary evidence in every circumstance. *Id.* A trial court has the discretion to admit secondary evidence if the offering party demonstrates to the court's satisfaction that the primary evidence is "lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible to him, or is voluminous or complicated." *Schnucks*, 595 S.W.2d at 283 (citing 29 Am.Jur.2d *Evidence* § 459 (1967)). The proponent of the secondary evidence is not required to prove the unavailability of the primary evidence "beyond the possibility of mistake." *Id.*

In the instant case Jennings proffered a reasonable explanation for the failure to produce the original records of his hours in that his original attorney could not locate them. He stated that the information contained in exhibit 24 had been copied directly from the original scraps of paper and that exhibit 24 precisely documented the contents of the original records. Thus, the trial court did not err in admitting exhibit 24 as secondary evidence.

Integon also suggests that exhibits 25 and 34 were likewise inadmissible because they were based solely on exhibit 24. However, Integon's contention must fall in light of our holding that the trial court did not abuse its discretion in admitting exhibit 24 into evidence. Accordingly, the trial court did not err in admitting exhibits 25 or 34 into evidence. Point III is denied.

*Litigation Expenses*

■ Jennings sole point on appeal is that the trial court erred in not awarding him reasonable litigation expenses incurred in bringing this action. The trial court classified § 290.300 as a punitive statute which should be strictly construed so as to prohibit the recovery of reasonable litigation expenses as part of the fee award authorized

---

7. Integon argues that the contemporaneous element is lacking because the hours were transferred on a couple of occasions to a new sheet of paper. However, we disagree that the transfer of data destroys the admissibility of the new documents. Jennings testified that he was familiar with the original writings at the time they were recorded and that he copied the notes word for word to another sheet of paper. We conclude this satisfactorily complies with the contemporaneous requirement.

by the statute. Integon argues that Jennings did not preserve this point for appeal since it was not raised in a motion for new trial. We agree. The record submitted to this appellate court fails to show any evidence that Jennings filed a new trial motion. Missouri law requires that all trial court error first be presented to the trial court for resolution before being presented on appeal. Rule 84.13(a); *see also Brockman v. Lee,* 637 S.W.2d 104, 105 (Mo.App. 1982); *Linkogel v. Baker Protective Services, Inc.,* 626 S.W.2d 380, 389 (Mo.App. 1981). Thus, Jennings did not preserve this point for appellate review. Jennings' Point I is denied.

Judgment is affirmed.

All concur.