Frank A. MARCOMB, Appellant,

v.

HARTFORD FIRE INSURANCE COMPANY, Respondent.

No. WD 52173.

Missouri Court of Appeals,
Western District.

Oct. 22, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

George O'Connor, Independence, for appellant.

Keith Witten, Kansas City, for respondent.

SPINDEN, Judge.

When agents for a Kansas City car dealer wrongfully repossessed Frank A. Marcomb's car, they added injury to insult by hitting him with the car. Marcomb sued the deal-

er's bonding company, Hartford Fire Insurance Company, for damages he suffered in the repossession. Hartford refused to pay for any damages except for those directly related to the value of the automobile wrongfully taken from Marcomb—$1350.[1]

The dispute arose from an automobile purchase Marcomb negotiated with Steve Beebe, doing business as Cars 4 Less. Although Marcomb had made $1150 in payments for the vehicle, Beebe caused his agents to repossess the car from Marcomb's driveway. Beebe sold it to a third party. Marcomb was not aware that Beebe had excluded him from the chain of the car's title. Marcomb sued Beebe, and the circuit court entered default judgment for Marcomb against Beebe for $40,000 in actual damages, $10,382.05 attorney fees, $800.01 as costs and expenses and $60,000 as exemplary damages.[2]

The Motor Vehicle Commission sent Hartford a letter which said:

This letter authorizes you to pay the judgment of Frank Marcomb, which was the result of his suit against Steve Beebe d/b/a Cars 4 Less. ... This judgment, and the petition upon which it is based, reveal the conduct of Cars 4 Less which is in violation of Missouri statutes.

Because the conduct underlying this judgment is in violation of Section 301.562.2(5) and (12), RSMo. Supp.1990, and therefore could result in suspension or revocation of the dealership's license, this judgment is a payable claim under the terms of the bond coverage and pursuant to Section 301.560.1(4), RSMo. Supp.1990.[3]

When Hartford paid only $1350, Marcomb filed a vexatious refusal to pay action against Hartford. Marcomb asserted that, according to § 301.560.1(4), RSMo Supp.1991,[4] and the terms of the bond Hartford had issued to

Beebe, Hartford was obligated to indemnify him for all the losses he suffered from the repossession. Marcomb also contended that Hartford was bound by the judgment which he had obtained against Beebe for those damages. The circuit court granted Hartford's motion for summary judgment holding that a motor vehicle dealer's bond does not cover all losses and that Hartford was not bound by the judgment against Beebe. Marcomb appeals. We affirm the circuit court's granting Hartford's motion for summary judgment.

The bond Hartford issued to Beebe agreed to "indemnify any person dealing or transacting business with [Cars 4 Less] for any loss sustained by any person by reason of the acts of [Cars 4 Less] provided such acts of [Cars 4 Less] constitute grounds for suspension or revocation of [Cars 4 Less' motor vehicle dealer's license.]" The bond's language tracked the language of § 301.560.1(4) which says that a motor vehicle dealer bond "shall be an indemnity for any loss sustained by any person by reason of the acts of the person bonded *when such acts constitute grounds for the suspension or revocation of his license.*"[5]

Section 301.562.2, RSMo Supp.1991,[6] lists 12 grounds for suspending or revoking a motor vehicle dealer's license. None of them relate to running over a person while repossessing a car. The only ones involving tortious acts after licensure are "[o]btaining or attempting to obtain any money, commission, fee, barter, exchange or other compensation by fraud, deception or misrepresentation" and "[using an] advertisement or solicitation which is false." Section 301.562.2(5) and (11).

Hartford concedes that Beebe's failure to convey title to Marcomb for the vehicle he purchased was a ground for suspension or

1. Hartford paid Marcomb $1150, the cash payments he made for the car, and $200, the car's value.

2. The circuit court ordered that $10,000 of the actual damage award was against Beebe and Forest Rhea, Beebe's agent, jointly.

3. Section 301.560.1(4) says, "The proceeds of the bond or irrevocable letter of credit shall be paid upon receipt by the commission of a final judg-

ment from a Missouri court of competent jurisdiction against the principal and in favor of an aggrieved party."

4. This was the statute that was in effect at the time of the repossession. Senate Bill 35 amended this section in 1993.

5. We added the emphasis.

6. Senate Bill 35 amended this section in 1993.

revocation under § 301.562.2(5). That was the basis for its paying $1350. We agree with Hartford that it is not liable for the damages Marcomb suffered when the repossession agents hit him with the car because the statute did not make such an act a ground for license suspension or revocation.

Marcomb contends that Beebe always intended to repossess the vehicle and that the repossession was part of an unbroken course of tortious conduct beginning with the fraud which occurred at the time of the sale. We disagree. The repossession agents' hitting him with the car was an independent battery. Even if that were not so, Marcomb's first amended petition for damages did not assert any allegation to that effect.

■ Marcomb argues that because the State Motor Vehicle Commission directed Hartford to pay the judgment "[b]ecause the conduct underlying [the] judgment . . . could result in suspension or revocation of the dealership's license," the circuit court erred in not ordering the payment of the bond pursuant to § 301.560.1(4). That statute says, "The proceeds of the bond . . . shall be paid upon receipt by the commission of a final judgment from a Missouri court of competent jurisdiction against the principal and in favor of an aggrieved party[.]" The Commission's letter states a legal conclusion and is insufficient by itself to establish Hartford's liability. *See First Community Bank v. Western Surety Company,* 878 S.W.2d 887 (Mo.App.1994). Section 301.560.1(4) presumes judgment on a ground for which the bond makes the surety liable. Marcomb's contention is without merit.

■ Marcomb also contends, on the basis of *City of Kansas City, ex rel. Jennings v. Integon Indemnity Corporation,* 857 S.W.2d 233 (Mo.App.1993),[7] that the scope of the bond covered his attorney fees and costs incurred in the underlying case. The *Integon Indemnity* court stated that "the liability of a surety is coextensive with that of its

principal," but "the rights and liabilities of a surety are measured by those of the principal, absent an agreement to the contrary." *Id.* at 236. In other words, a bond's terms and conditions limit a surety's liability. *See Frank Powell Lumber Company v. Federal Insurance Company,* 817 S.W.2d 648, 651 (Mo.App.1991). Hartford's bond did not provide for recovery of attorney fees.

Missouri follows the American rule which precludes recovery of attorney fees with these exceptions: (1) a statute or a contractual provision allows for their recovery; (2) the fees are incurred due to involvement in collateral litigation; or (3) equity demands it. *Skyles v. Burge,* 830 S.W.2d 497, 499 (Mo. App.1992). None of those exceptions apply in this case.

Although the bond and § 301.560.1(4) provide that bond shall be an indemnity for *any loss,* attorney fees typically are not deemed included in the term "loss." *See Prudential Insurance Company of America v. Goldsmith,* 239 Mo.App. 188, 192 S.W.2d 1, 4 (1945).[8] Neither the statute nor the bond expressly authorized the recovery of attorneys' fees. The circuit court properly concluded that Marcomb was not entitled to attorney fees.

■ Marcomb also asserts that the circuit court erred by not finding that Hartford's refusal to pay under the bond constituted vexatious refusal to pay. Section 375.420, RSMo 1994, says:

> In any action against any insurance company to recover the amount of any loss . . . if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee[.]

7. In this case, the worker was allowed to recover attorney fees because § 290.300, RSMo 1986, allowed them.

8. In that case, the court dealt with a disappearance bond. The court concluded, "The term

'costs' or 'expenses,' as used in a statute, is not understood ordinarily to include attorneys' fees. Generally, it is held that attorneys' fees are not included within a contractual provision for the payment of 'expenses.' "

This statute also applies to suit on surety bonds. *See Housing Authority of City of Clinton v. Baumann,* 512 S.W.2d 436, 440 (Mo.App.1974).

■ The statutory penalty for vexatious refusal to pay cannot be imposed unless the evidence and the circumstances of the case establish that the surety's refusal to pay the claim was willful and without reasonable cause. *Morris v. J.C. Penney Life Insurance Company,* 895 S.W.2d 73, 76 (Mo.App. 1995). Further, the purpose of § 375.420 is to deter a surety or an insurer from vexatiously refusing to pay after it has become aware that it has no meritorious defense. *Id.* Our having concluded that Hartford was correct belies a contention that it did not have a meritorious reason for refusing to pay more than $1350.

■ Finally, Marcomb complains that the circuit court erred in granting Hartford's motion for summary judgment by finding that the judgment against Beebe was a default judgment and not binding on Hartford. We disagree. Even if the default judgment did bind Hartford, and we need not decide whether it did, the agreement between Hartford and Beebe provided that Hartford would indemnify "any loss sustained by any person by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of his license." Hartford cannot be liable for more damages than it contracted to cover, even in light of the default judgment entered against Beebe. "Liability of a surety is limited to the terms and conditions stated in the bond." *Frank Powell Lumber Company,* 817 S.W.2d at 651. A court may not enlarge the obligation of a bond beyond its plain terms, for to do so would make a contract for the parties they did not make for themselves and impose upon them obligations they have not assumed. *Id.*

We affirm the circuit court's summary judgment.

ULRICH, C.J., P.J., and EDWIN H. SMITH, J., concur.