**GREEN RIVER ASSOCIATES,**
**Appellant/Cross–Respondent,**

v.

**MARK TWAIN KANSAS CITY BANK,**
**Respondent/Cross–Appellant.**

**Nos. WD 42997, WD 43017.**

Missouri Court of Appeals,
Western District.

March 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1991.

Application to Transfer Denied
June 11, 1991.

Gene E. Voigts, Peter E. Strand, Judith S. Barber, Shook, Hardy & Bacon, Kansas City, for appellant/cross-respondent.

Jerome T. Wolf, Terry W. Schackmann, Lauri A. Newton, Spencer Fane Britt & Browne, Kansas City, for respondent/cross-appellant.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Green River Associates filed suit against Mark Twain Kansas City Bank in three counts. Count I was on a theory of failure of consideration and sought to invalidate a note and deed of trust executed by the general partner of Green River and delivered to the Bank. Count II was for negligent disbursement of the proceeds of the loan and sought damages, and Count III alleged bad faith on the part of the Bank in dealing with a fiduciary and sought damages. The trial court found in favor of the Bank on all counts but found the Bank acted negligently. Green River has appealed and contends the note is invalid for failure of consideration. As a precaution in the event the negligence count is reached on appeal, the Bank has appealed from the trial court finding that it was negligent. Reversed in part and affirmed in part and the Bank's appeal is dismissed.

This is another sorry chapter in the collapse of Kroh Brothers, a real estate company. The facts are not in dispute. Green River is a limited partnership whose sole business is the ownership and operation of a mobile home park in Riverside County, California. Ewing Kauffman is the principal investor in Green River and he with three other individuals are the remaining limited partners. Green River was formed in June, 1978, and shortly thereafter Kroh Brothers Equity (KBE) became the general partner. KBE was a wholly owned subsidiary of Kroh Brothers Development Company.

The Bank began loaning money to Kroh Brothers in February, 1986, and by June these loans totaled more than $8 million. On June 4, 1986, Jenna Garretson, Assistant Vice-President of Kroh Brothers Development Company and also of KBE wrote to Scott Spiker, Senior Vice-President of the Bank, requesting a loan to be made to Green River. Garretson said that the purpose of the loan was to buy Kauffman's limited partnership interest. The Bank had never dealt with Green River prior to this time but was well aware that KBE was the general partner and also a Kroh Brothers subsidiary. The Bank felt confident of its "growing relation" with Kroh Brothers by the time Garretson's request arrived. Spiker made a presentation to the Bank's loan committee and strongly recommended that a loan to Green River in the amount of $3.1 million be approved based on the financial evaluation he made of Green River in its operation and on the Bank's "solid relationship with the Kroh Brothers." Spiker obtained a copy of the Green River partnership agreement and thoroughly reviewed it. The Bank never contacted Kauffman to verify that Green River was going to buy out his interest in the partnership.

After the loan had been approved and Spiker was prepared to disburse the pro-

ceeds, he contacted Garretson for instructions. Garretson told Spiker to wire the loan proceeds to a United Missouri Bank account that Spiker knew belonged to Kroh Brothers. Spiker also knew that the account to which the loan proceeds were wired did not belong to KBE or Green River. Spiker withheld fees charged by the Bank and wired $3,057,790 to the Kroh Brothers account as instructed by Garretson.

Spiker had questioned Garretson about the reason for wiring the proceeds to the Kroh Brothers account rather than having the proceeds going to an account in the name of Green River or KBE. Garretson said neither KBE nor Green River had a bank account and without further inquiry Spiker wired the proceeds to the Kroh Brothers account as directed by Garretson.

In late 1986, after the loan to Green River had been completed, it became public knowledge that Kroh Brothers and its various entities were in deep financial trouble. Green River failed to repay the loan and in January, 1987, the Bank instituted non-judicial foreclosure proceedings in California. Thereafter Green River instituted this suit as a means of determining the validity of the note and deed of trust given to secure it.

The case was tried to the court which entered findings of fact and conclusions of law. The court found that Kroh Brothers Development and KBE are now in bankruptcy. The court found that this loan was obtained by KBE after an intent had been formed by KBE to obtain the loan and misappropriate the proceeds. The court found that under the partnership agreement KBE had only apparent authority to obtain the loan and that the loan was made without knowledge on the part of the Bank of the fraudulent purpose of KBE.

The court found that of the $3.1 million loan Green River only received $45,000 and an asset entry on the records of Kroh Brothers.[1] The court found that the Uniform Fiduciaries Law, § 456.250, RSMo

1986, applies in this case and that the Bank was dealing with a fiduciary and was thereby protected from the misappropriation made by KBE. The court found that the note and deed of trust were obtained for a valid consideration because KBE had apparent authority to obtain the loan and Green River had the responsibility to use an honest fiduciary. The court found that the loss should be borne by Green River because it chose a dishonest fiduciary.

Green River contends that the note is invalid because there was a failure of consideration because Green River never received the money for the loan. The further contention is that the Uniform Fiduciaries Law does not protect the Bank because the proceeds were not paid by the Bank to a fiduciary. Green River does not question the authority of KBE to obtain the loan. The Bank contends that under the partnership agreement KBE had authority to direct the loan proceeds to be paid to Kroh Brothers.

The partnership agreement provided "[t]he Partnership shall maintain checking and other accounts at such banks and other financial institutions as the General Partner shall determine and all funds received by the Partnership shall be deposited therein." The bank contends that this provision did not expressly require that KBE maintain separate bank accounts in the name of Green River but could maintain such accounts as it "shall determine and deposit partnership funds therein." The Bank reasons that KBE had actual and apparent authority to direct the proceeds to the account it had determined was to be used for the deposit of the loan proceeds.

The Bank misreads the partnership agreement. The agreement in clear language requires (1) the partnership to maintain checking and other accounts, (2) at such banks and other financial institutions as the general partner shall determine, and (3) that all funds received by the partnership shall be deposited therein. The Bank reads the provision to say that accounts be

---

1. To state the obvious, the asset entry on the records of a bankrupt did not prove to be of any value to Green River.

maintained "as the General Partner shall determine." This overlooks the requirement that the partnership shall maintain checking and other accounts and that all funds received by the partnership shall be deposited therein. Certainly it would require the account to be in the name of the partnership for the partnership to maintain a checking or other account. It would be impossible for the partnership to maintain an account which was not in its name. Further, the requirement that all funds received by the partnership be deposited in such accounts requires that the partnership maintain checking and other accounts in its own name.

The Bank knew that the partnership agreement required that all funds received by the partnership were to be deposited in an account to be maintained by the partnership. When the Bank wired the money to the Kroh Brothers account it knew that such action was contrary to the partnership agreement.

Despite the fact that the Bank knew that all partnership funds were to be deposited in a partnership account, the bank argues that KBE had apparent authority to direct the Bank to disburse the funds to an entity other than the partnership. But the Bank may not rely on the apparent authority of KBE to direct the funds to be deposited in an account not in the name of Green River when the Bank knew from the agreement that the general partner was violating the agreement when it directed the funds to be deposited in the name of another entity. In *Distassio v. American United Life Ins. Co.*, 238 Mo.App. 279, 179 S.W.2d 610, 612[3] (1944), this court stated:

It follows that if the third party had actual or constructive knowledge of restrictions and limitations on the authority of the general agent, then they must contract with him with those restrictions and limitations in mind and cannot blindly rely on his apparent authority.

This court further quoted from *Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 (1913):

One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal; ...

*Id.*, 179 S.W.2d at 613.

■ It is clear that under the law the Bank could not rely upon apparent authority on the part of KBE to direct that the proceeds of the loan be deposited in the Kroh Brothers account when it had actual knowledge of the duty of KBE to deposit all funds belonging to the partnership in a partnership account. With knowledge of the restrictions on KBE in dealing with money going to Green River, the Bank may not rely on the apparent authority of KBE to act beyond its actual authority.

■ The Bank further argues that KBE had been commingling partnership funds with other money handled by it and therefore it was permissible for KBE to commingle the loan proceeds with other Kroh Brothers money. Even if this argument had any legal effect, it fails because there is no evidence that the Bank had knowledge of such commingling when the loan proceeds were paid into the Kroh Brothers account.[2]

■ The Bank also contends that it is protected by the Uniform Fiduciaries Law

2. The dissent would deny Green River the right to prevail on the theory of estoppel. As noted, there is no evidence that the bank had any knowledge of the commingling of funds prior to the time it paid the loan proceeds to the Kroh Brothers account. Further, there is no evidence of any statement or act by Green River which would estop it from asserting the present cause of action. The elements essential to establishing a claim of estoppel are stated in *Lake St. Louis Community Association v. Ravenwood Properties, Ltd.*, 746 S.W.2d 642, 646[8] (Mo. App.1988), to be, first, an admission, statement, or act by the person to be estopped that is inconsistent with the claim later asserted; second, action taken by the second party on the faith of such admission, statement, or act; and third, an injury resulting to the second party if the first party is permitted to contradict or repudiate his admission, statement, or act. It is apparent from the facts that the bank cannot point to any admission, statement, or act on the part of Green River that led it to pay the money to Kroh Brothers. Absent such evidence, there can be no estoppel in this case. Neither can there be waiver or acquiescence under the facts presented here.

because it dealt with KBE, who was a fiduciary. Section 456.250 provides that a person who pays a fiduciary is not responsible for the proper application of the money received by the fiduciary. The answer to this contention is that the money was not paid to KBE, who was the fiduciary, but was paid to Kroh Brothers Development, who was not a fiduciary. The Bank further contends that KBE had the authority to direct the money to be paid to another institution and since KBE was the fiduciary the Bank is protected when it followed the fiduciary's direction. The answer to that argument is that § 456.250 does not state that a person who pays money to another at the direction of the fiduciary is not responsible for the proper application of the money received. That section states that only those who pay money to a fiduciary are protected.

To adopt such argument would require this court to rewrite § 456.250. The statute is clear that the Bank is protected when it makes payment to a fiduciary. This court would be required to hold that the section reads "when payment is made to a fiduciary or to such entity as the fiduciary may direct." This would be a dangerous broadening of the statute and this court has no power to add words to a statute to broaden its meaning.

The language of the statute is clear and unambiguous. The duty of this court is to give the unambiguous language of a statute its plain and natural meaning. *Farmers' & Laborers' v. Dir. of Revenue*, 742 S.W.2d 141, 145[8] (Mo. banc 1987). Giving the statute its plain and natural meaning can only result in the conclusion that the Bank is protected if it pays a fiduciary, but not if it pays someone else, even if it is at the direction of the fiduciary.

When the Bank paid money to Kroh Brothers Development, who was not a fiduciary, it did not fall within the provision of § 456.250 and therefore it is not entitled to the protection of the Uniform Fiduciaries Law. The Bank makes other arguments of a peripheral nature which have been considered and found to be without merit.

Green River was obligated to prove by clear and cogent evidence that the note should be declared void on the ground of lack of consideration. *Lillo v. Thee*, 676 S.W.2d 77, 80[2] (Mo.App.1984). Here, the facts are conceded by the Bank as set out above and the Bank does not dispute the court's finding that Green River only received $45,000 from the $3.1 million loan obtained in its name. The fact that the Bank paid the proceeds to an entity having no relationship to Green River and that Green River did not actually receive any of the loan proceeds, except for the $45,000, demonstrate a failure of consideration. *See Anchor Partners LTD v. Mercantile Bank*, 803 S.W.2d 23, 33 (Mo. banc 1991).

Section 400.3–408, RSMo 1986, provides that a want or failure of consideration is a defense as against any person who is not a holder in due course of an instrument. The Bank is not a holder in due course because the note was payable to it. That section further provides that partial failure of consideration is a defense pro tanto.

The court misapplied the law when it found that KBE had apparent authority to direct the proceeds of the loan to be paid to Kroh Brothers Development and in finding that the Uniform Fiduciaries Law applied. The court should have found that KBE did not have apparent authority to direct payment of the loan proceeds to another entity and the money from the loan was not paid to a fiduciary, therefore, the Bank was not protected by the Uniform Fiduciaries Law. The court should have found that because Green River did not receive any money from the loan, except for $45,000, that there was a failure of consideration for the balance of the loan.

The parties make other arguments concerning whether the Bank acted in bad faith but it is not necessary to discuss that aspect because the Uniform Fiduciaries Law requires both an act in good faith and a payment to a fiduciary. On finding that payment was not made to a fiduciary, the

question of whether the Bank acted in good faith becomes irrelevant.[3]

Also irrelevant is any discussion of whether the Bank acted negligently in paying the loan proceeds. A finding that Green River is entitled to relief on Count I of its petition for failure of consideration disposes of Count II of the petition which was an alternative theory of relief based on negligence if the failure of consideration claim failed. The court correctly found in favor of the Bank on Count II. For the reasons stated the appeal by the Bank from the finding of negligence is dismissed.

Count III of the petition was based on a violation of the Uniform Fiduciaries Law. The holding that such law does not apply because money was not paid to a fiduciary means that the court correctly found in favor of the Bank on Count III.

The judgment in favor of the Bank on Count I is reversed and this cause is remanded with directions to enter judgment in favor of Green River finding that the note and deed of trust are invalid for failure of consideration except to the extent of $45,000. The judgment shall declare the note and deed of trust to be valid to the extent of $45,000 from the date of the note. The judgment in favor of the Bank on Counts II and III is affirmed. The appeal of the Bank is dismissed. Costs are assessed against the Bank.

GAITAN, J., concurs.

KENNEDY, J., dissents in separate opinion filed.

KENNEDY, Judge, dissenting.

I am unable to agree with my estimable colleagues in our disposition of this case. I would affirm the judgment of the trial court.

The critical point in our denial of the bank's lien upon the California property securing the Green River note to Mark Twain, according to the majority opinion, is the bank's payment of the proceeds of the loan into a bank account which was entitled in the name of "Kroh Brothers Development Company" and not in the name of "Green River Associates."

The partnership agreement among the general partner of Green River (Kroh Brothers Equity Company, a wholly owned subsidiary of Kroh Brothers Development Company) and the limited partners required that Green River maintain bank accounts and deposit partnership funds therein. Since Mark Twain deposited the Green River loan proceeds in a bank account entitled Kroh Brothers Development Company, says the majority opinion, and even though the deposit was made at the direction of Green River through its general partner, the bank loses its loan and Green River receives its property discharged of the lien of the deed of trust securing the repayment of the same.

I would hold that Green River is estopped from asserting that the bank must lose its security, and therefore its loan, because it placed the proceeds of the loan in the Kroh Brothers account, and did not

---

3. The dissent relies upon the statement that as between two innocent persons, one of whom must suffer the consequence of a breach of trust, the one who made it possible by his act of confidence must bear the loss. That statement applies when one entrusts a bearer document to the care of another who misapplies it. The rule applicable to the facts in this case is stated in *Pashalian v. Big–4 Chevrolet Company,* 348 S.W.2d 628, 634[7] (Mo.App.1961):

> [W]here one of two innocent parties shall suffer by reason of the fraud of a third person, the one who permits himself to be deceived and thus puts it in the power of such third person to defraud another shall be the loser rather than the latter.

In this case, the bank permitted itself to be deceived by the instructions to deposit the funds in the Kroh Brothers account when it knew the agreement required the funds to be deposited in a Green River account. In that situation, as between the bank and Green River, the loss should fall on the bank in view of the fact that Green River had no knowledge of the loan or that the bank was paying the proceeds of the loan to an account not in Green River's name. All the bank had to do was insist that the proceeds would be paid to an account in the name of Green River and it would be free of liability.

insist upon depositing it in a bank account entitled "Green River Associates."[1]

Estoppel is an amorphous concept, without clear and definable boundaries, and conduct which may be said to give rise to an estoppel in one case may be called acquiescence or waiver in another. *See* 28 Am. Jur.2d *Estoppel and Waiver* § 30 (1966). After Green River had over a long period of time acquiesced in the practice of commingling its funds with others in a bank account titled to another entity, I would apply the concept (by whatever name) to refuse to Green River the right to deny it had received funds which Mark Twain had deposited in that account upon Green River's instructions.

The fact was, the general partner and the limited partners of Green River Associates themselves had ignored the partnership provision about the maintenance of Green River bank accounts. The mode of operation of Kroh Brothers Development Company was to maintain a single bank account into which the funds of all the limited partnerships were deposited and commingled. The distribution of the funds in the account were controlled on Kroh Brothers internal books. For example, when Kroh Brothers received the advice that $3,057,790 (amount of $3,100,000 loan less loan expenses) had been deposited in the Kroh Brothers Development bank account as proceeds of the Green River Associates loan from Mark Twain Bank, an entry was made to show that Kroh Brothers Development was indebted to Green River Associates in that amount.

Mr. Ewing Kauffman was the major limited partner, with a 90.3% interest. He had become a limited partner on December 7, 1979. Edward L. Benson had a 3.6% share, and C. Ted McCarter and Michael E. Herman had 1.8% each.

The limited partners constructively knew that Green River funds were being deposited in bank accounts other than Green River bank accounts. Throughout the nine-year history of the Green River Associates limited partnership, its funds had been deposited in other bank accounts and commingled with funds of other Kroh Brothers limited partnerships. The existence of this practice for such a long period of time was sufficient to give constructive notice thereof to those who had an interest in it, and whose business it was to be informed about it. They could not expect others to challenge the practice which they had acquiesced in over a long lapse of time.

But the limited partners had more than constructive knowledge that Green River funds were being commingled with the funds of other limited partnerships; Mr. Kauffman had actual notice of facts which should have placed him upon inquiry. Peat, Marwick, Mitchell & Company reviewed some of his investments and reported to his agent Jim Mellilo, by a lengthy letter dated December 29, 1981: "Currently, the funds of Hernando Associates, Ltd., Hillsboro Associates, Ltd., Leawood Office Associates, Green River Associates, [all Kroh Brothers limited partnerships in which Mr. Kaufman was a limited partner] and other general partner affiliates and partnerships are commingled in the same bank account at United Missouri Bank." Mr. Kauffman was not conversant with his investments; he relied almost entirely upon the advice of Mike Herman, whose duty it was to direct his investments, and upon people under Mr. Herman's supervision, including Jim Mellilo, mentioned above. Mellilo after receiving the Peat Marwick letter instructed Kroh Brothers to cease commingling the monies of these various partnerships. Kroh indicated that the commingling would be stopped. Neither Mr. Kauffman nor his agents followed up with Kroh to determine whether the commingling had ceased, and, in fact, the commingling continued.

Commingling Green River funds with those of other entities is not exactly the same thing as not having a Green River bank account for Green River funds, but the practice of commingling funds would

1. The Bank before disbursing the loan proceeds inquired about the existence of a Green River bank account and was correctly informed there was none. If there had been a Green River bank account, presumably the Bank would have transferred the funds to it.

naturally raise the question of the title of the bank account in which the funds were commingled—and, furthermore, the partnership agreement provision for bank accounts in the name of Green River had for its purpose, or its main purpose, the avoidance of commingling. The Peat Marwick letter, therefore, would have drawn Mr. Kauffman's and his representatives' attention to the bank account and, if they objected to Kroh Brothers' way of handling the Green River funds, they could have corrected it at that time.

Another fact would have drawn the limited partners' attention to the absence of a Green River Associates bank account. That was the receipt by the limited partners of distributions by checks drawn upon a United Missouri Bank account in the name of Kroh Brothers Management Company, an affiliate of Kroh Brothers Development Company and Kroh Brothers Equity. This fact, however, did not cause the limited partners to take any action about the deviation from the terms of the partnership agreement with respect to the maintenance of a Green River bank account.

To summarize, the limited partners over the nine-year life of the Green River limited partnership failed to take any step to enforce the provision in the partnership agreement which required the maintenance of separate Green River bank accounts, even though they knew, or should have known, that the Kroh Brothers general partner was not complying with that part of the agreement. The Mark Twain Bank should not be held to greater zeal in requiring a separate Green River bank account than the partners had themselves exercised.

It is significant, furthermore, that the Bank's transfer of the funds into the Kroh Brothers bank account in no way caused, or made it easier for Kroh Brothers to misappropriate the funds. Had the Bank written a check to "Green River Associates" for the proceeds of the loan and delivered it to the Green River general partner, the general partner could have collected it and misappropriated it just as easily and conveniently as it did when the funds were disbursed to the Kroh Brothers account in United Missouri Bank. The case is unlike those cases where the third person's (the Bank's, in the case before us) payment of trust funds to another at the trustee's direction places the funds beyond the reach of the trust and the beneficiaries and the payment itself constitutes the misappropriation. In those cases, the person in the Bank's position (if he had knowledge of the breach of trust) is a "participant" in the misappropriation. Restatement, Trust 2nd, Sec. 321–326; Trusts and Trustees, Bogert, Sec. 901–912; IV Scott on Trusts, Secs. 321–326. That is not the case here. The Bank's transfer of funds did not "further or complete" the breach of trust by Kroh Brothers; and, furthermore, it had no knowledge at the time that its transfer of funds amounted to a breach of trust. Unless both those elements are present, the Bank cannot be held as a "participant" in Kroh Brothers breach of trust. Bogert, Trusts and Trustees, Sec. 901.

It is difficult to accept the appellant's argument, adopted by the majority opinion, that the bank's claim on the note and mortgage is unsupported by consideration. Consideration, by its classical definition, may consist of a benefit to the one party or a detriment to the other. 1 Williston on Contracts §§ 102–103 (W. Jaeger 3d ed. 1957); *Hunt v. Dallmeyer*, 517 S.W.2d 720, 724 (Mo.App.1974). Both were present in this case. The bank certainly suffered a detriment; it paid out the proceeds of the Green River's loan in the form of cash transferred and deposited as directed by the borrower, Green River. And Green River received a benefit; at the time of the transfer, and for some undetermined time thereafter, the funds were available to Green River and could have been used by Green River. The signators on the Kroh Brother Development bank account into which the loan proceeds were deposited were John Kroh, George Kroh and A.T. Wheeler, who were the directors, and the only directors, of Kroh Brothers Equity, which was the Green River general partner. The funds were accessible by Kroh Brothers Equity and hence by Green River.

The record does not show when the Green River share of the bank account disappeared.

The trial judge in rendering judgment for the bank noted: "The responsibility to use an honest fiduciary is with the principal who retains the fiduciary.... If Mark Twain Bank was not guilty of bad faith in its dealings with Kroh Brothers Equity or Green River, the loss should be sustained by the one who retained the fiduciary that occasioned the loss." This is an ancient and incontestable principle. As between two innocent persons, one of whom must suffer the consequence of a breach of trust, the one who made it possible by his act of confidence must bear the loss. *Spikes v. Clark,* 411 S.W.2d 148, 154 (Mo. 1967); *Bolivar Reorganized School Dist. v. American Surety Co.,* 307 S.W.2d 405, 410 (Mo.1957); 27 Am.Jur.2d *Equity* § 147 (1966). This principle, under the facts of this case, seems to me to be decisive of the case and indicate affirmance of the judgment in Mark Twain's favor.