812 So.2d 561 (2002)
RNR INVESTMENTS LIMITED PARTNERSHIP, Appellant,
v.
PEOPLES FIRST COMMUNITY BANK, Appellee.
No. 1D01-1682.
District Court of Appeal of Florida, First District.
March 28, 2002.
*562 Darrin R. Schutt of Seemann & Schutt, P.A., Cape Coral, for Appellant.
*563 Timothy M. Warner and Sherri Denton Mallory of Warner & Mallory, P.A., Panama City, for Appellee.
VAN NORTWICK, J.
RNR Investments Limited Partnership (RNR) appeals a summary judgment of foreclosure granted in favor of appellee, Peoples First Community Bank (the Bank). RNR argues that the trial court erred in granting summary judgment because disputed issues of material fact remained with respect to one of RNR's affirmative defenses. In that affirmative defense, RNR alleged that the Bank was negligent in lending $960,000 to RNR without consent of the limited partners when, under RNR's Agreement of Limited Partnership, the authority of RNR's general partner was limited to obtaining financing up to $650,000. Under section 620.8301(a), Florida Statutes (2000), however, the Bank could rely upon the general partner's apparent authority to bind RNR, unless the Bank had actual knowledge or notice of his restricted authority. In opposing summary judgment, RNR produced no evidence showing that the Bank had actual knowledge or notice of restrictions imposed on the authority of RNR's general partner. Accordingly, no issues of material facts are in dispute and we affirm.

Factual and Procedural History
RNR is a Florida limited partnership formed pursuant to chapter 620, Florida Statutes, to purchase vacant land in Destin, Florida, and to construct a house on the land for resale. Bernard Roeger was RNR's general partner and Heinz Rapp, Claus North, and S.E. Waltz, Inc., were limited partners. The agreement of limited partnership provides for various restrictions on the authority of the general partner. Paragraph 4.1 of the agreement required the general partner to prepare a budget covering the cost of acquisition and construction of the project (defined as the "Approved Budget") and further provided, in pertinent part, as follows:
The Approved Budget for the Partnership is attached hereto as Exhibit "C" and is approved by evidence of the signatures of the Partners on the signature pages of this Agreement.... In no event, without Limited Partner Consent, shall the Approved Budget be exceeded by more than five percent (5%), nor shall any line item thereof be exceeded by more than ten percent (10%), ...
Paragraph 4.3 restricted the general partner's ability to borrow, spend partnership funds and encumber partnership assets, if not specifically provided for in the Approved Budget. Finally, with respect to the development of the partnership project, paragraph 2.2(b) provided:
The General Partner shall not incur debts, liabilities or obligations of the Partnership which will cause any line item in the Approved Budget to be exceeded by more than ten percent (10%) or which will cause the aggregate Approved Budget to be exceed by more than five percent (5%) unless the General Partner shall receive the prior written consent of the Limited Partner.
In June 1998, RNR, through its general partner, entered into a construction loan agreement, note and mortgage in the principal amount of $990,000. From June 25, 1998 through Mar. 13, 2000, the bank disbursed the aggregate sum of $952,699, by transfers into RNR's bank account. All draws were approved by an architect, who certified that the work had progressed as indicated and that the quality of the work was in accordance with the construction contract. No representative of RNR objected to any draw of funds or asserted that the amounts disbursed were not associated with the construction of the house.
*564 RNR defaulted under the terms of the note and mortgage by failing to make payments due in July 2000 and all monthly payments due thereafter. The Bank filed a complaint seeking foreclosure. RNR filed an answer and affirmative defenses. In its first affirmative defense, RNR alleged that the Bank had failed to review the limitations on the general partner's authority in RNR's limited partnership agreement. RNR asserted that the Bank had negligently failed to investigate and to realize that the general partner had no authority to execute notes, a mortgage and a construction loan agreement and was estopped from foreclosing. The Bank filed a motion for summary judgment with supporting affidavits attesting to the amounts due and owing and the amount of disbursements under the loan.
In opposition to the summary judgment motion, RNR filed the affidavit of Stephen E. Waltz, the president one of RNR's limited partners, S.E. Waltz, Inc. In that affidavit, Mr. Waltz stated that the partners anticipated that RNR would need to finance the construction of the residence, but that paragraph 2.2(b) of the partnership agreement limited the amount of any loan the general partner could obtain on behalf of RNR to an amount that would not exceed by more than 10% the approved budget on any one line item or exceed the aggregate approved budget by more than 5%, unless the general partner received the prior written consent of the limited partners. Waltz alleged that the limited partners understood and orally agreed that the general partner would seek financing in the approximate amount of $650,000. Further, Waltz stated:
Even though the limited partners had orally agreed to this amount, a written consent was never memorialized, and to my surprise, the [Bank], either through its employees or attorney, ... never requested the same from any of the limited partners at any time prior to [or] after the closing on the loan from the [Bank] to RNR.
Waltz alleged that the partners learned in the spring of 2000 that, instead of obtaining a loan for $650,000, Roeger had obtained a loan for $990,000, which was secured by RNR's property. He stated that the limited partners did not consent to Roeger obtaining a loan from the Bank in the amount of $990,000 either orally or in writing and that the limited partners were never contacted by the Bank as to whether they had consented to a loan amount of $990,000.
RNR asserts that a copy of the limited partnership agreement was maintained at its offices. Nevertheless, the record contains no copy of an Approved Budget of the partnership or any evidence that would show that a copy of RNR's partnership agreement or any partnership budget was given to the Bank or that any notice of the general partner's restricted authority was provided to the Bank.
A hearing on the motion for summary judgment was held, however, a transcript of that hearing is not contained in the record. Thereafter, the trial court entered a summary final judgment of foreclosure in favor of the Bank. The foreclosure sale has been stayed pending the outcome of this appeal.

Summary Judgment
The party moving for summary judgment bears the heavy burden of proving a negativethe nonexistence of a genuine issue of material fact. "If the record reflects even the possibility of a material issue of fact, or if different inferences can be drawn reasonably from the facts, the doubt must be resolved against the moving party and summary judgment must be denied." Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1095 (Fla. 1st DCA 1999) (citation *565 omitted). Where the moving party offers evidence to support its claim of the nonexistence of a genuine issue of material fact, the nonmoving party "must demonstrate the existence of such an issue or issues either by countervailing facts or justifiable inferences from the facts presented." Fleming v. Peoples First Fin. Sav. & Loan Ass'n, 667 So.2d 273, 274 (Fla. 1st DCA 1995). Here, even when the facts and all reasonable inferences that might be drawn from them are viewed in a light most favorable to appellant, for the reasons explained below, no disputed issues of material fact exist concerning the apparent authority of the general partner to bind the limited partnership by entering into the construction loan, note and mortgage.

Apparent Authority of the General Partner
Although the agency concept of apparent authority was applied to partnerships under the common law, see, e.g., Taylor v. Cummer Lumber Co., 59 Fla. 638, 52 So. 614, 616 (1910), in Florida the extent to which the partnership is bound by the acts of a partner acting within the apparent authority is now governed by statute. Section 620.8301(1), Florida Statutes (2000)[1], a part of the Florida Revised Uniform Partnership Act (FRUPA), provides:
Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary scope of partnership business or business of the kind carried on by the partnership, in the geographic area in which the partnership operates, binds the partnership unless the partner had no authority to act for the partnership in the particular manner and the person with whom the partner was dealing knew or had received notification that the partner lacked authority.
Thus, even if a general partner's actual authority is restricted by the terms of the partnership agreement, the general partner possesses the apparent authority to bind the partnership in the ordinary course of partnership business or in the business of the kind carried on by the partnership, unless the third party "knew or had received a notification that the partner lacked authority." Id. "Knowledge" and "notice" under FRUPA are defined in section 620.8102. That section provides that "[a] person knows a fact if the person has actual knowledge of the fact." § 620.8102(1), Fla. Stat. (2000). Further, a third party has notice of a fact if that party "(a) [k]nows of the fact; (b) [h]as received notification of the fact; or (c) [h]as reason to know the fact exists from all other facts known to the person at the time in question." § 620.8102(2), Fla. Stat. (2000). Finally, under section 620.8303 a partnership may file a statement of partnership authority setting forth any restrictions in a general partner's authority.
Commentators have described the purpose of these knowledge and notice provisions, as follows:
Under RUPA, the term knew is confined to actual knowledge, which is cognitive awareness.... Therefore, despite the similarity in language, RUPA provides greater protection [than the Uniform *566 Partnership Act (UPA)] to third persons dealing with partners, who may rely on the partner's apparent authority absent actual knowledge or notification of a restriction in this regard. RUPA effects a slight reallocation of the risk of unauthorized agency power in favor of third parties. That is consistent with notions of the expanded liability of principals since the UPA was drafted.
RUPA attempts to balance its shift toward greater protection of third parties by providing several new ways for partners to protect themselves against unauthorized actions by a rogue partner. First, the partnership may notify a third party of a partner's lack of authority. Such notification is effective upon receipt, whether or not the third party actually learns of it. More significantly, the partnership may file a statement of partnership authority restricting a partner's authority.
Donald J. Weidner & John W. Larson, The Revised Uniform Partnership Act: The Reporters' Overview, 49 Bus. Law 1, 31-32 (1993)(footnotes omitted). "Absent actual knowledge, third parties have no duty to inspect the partnership agreement or inquire otherwise to ascertain the extent of a partner's actual authority in the ordinary course of business, ... even if they have some reason to question it." Id. at 32 n. 200. The apparent authority provisions of section 620.8301(1), reflect a policy by the drafters that "the risk of loss from partner misconduct more appropriately belongs on the partnership than on third parties who do not knowingly participate in or take advantage of the misconduct ..." J. Dennis Hayes, Notice and Notification Under the Revised Uniform Partnership Act: Some Suggested Changes, 2 J. Small & Emerging Bus. L. 299, 308 (1998).

Analysis
Under section 620.8301(1), the determination of whether a partner is acting with authority to bind the partnership involves a two-step analysis. The first step is to determine whether the partner purporting to bind the partnership apparently is carrying on the partnership business in the usual way or a business of the kind carried on by the partnership. An affirmative answer on this step ends the inquiry, unless it is shown that the person with whom the partner is dealing actually knew or had received a notification that the partner lacked authority. See Kristerin Dev. Co. v. Granson Inv., 394 N.W.2d 325, 330 (Iowa 1986)(applying Iowa version of UPA). Here, it is undisputed that, in entering into the loan, the general partner was carrying on the business of RNR in the usual way. The dispositive question in this appeal is whether there are issues of material fact as to whether the Bank had actual knowledge or notice of restrictions on the general partner's authority.
RNR argues that, as a result of the restrictions on the general partner's authority in the partnership agreement, the Bank had constructive knowledge of the restrictions and was obligated to inquire as to the general partner's specific authority to bind RNR in the construction loan. We cannot agree. Under section 620.8301, the Bank could rely on the general partner's apparent authority, unless it had actual knowledge or notice of restrictions on that authority. While the RNR partners may have agreed upon restrictions that would limit the general partner to borrowing no more than $650,000 on behalf of the partnership, RNR does not contend and nothing before us would show that the Bank had actual knowledge or notice of any restrictions on the general partner's authority. Here, the partnership could have protected itself by filing a statement pursuant to section 620.8303 or by providing notice to the Bank of the specific restrictions on the authority of the general partner.
*567 RNR relies on Green River Assocs. v. Mark Twain Kansas City Bank, 808 S.W.2d 894 (Mo.Ct.App.1991), as authority for its argument that the Bank was negligent in providing financing in reliance upon the apparent authority of the general partner. RNR's reliance is misplaced. In Green River, the express language of the partnership agreement, known to the bank, required that the proceeds of the loan be deposited in the partnership bank account. The court found that, when the bank wired partnership money to an account of an entity other than the partnership, the bank knew that its actions were contrary to the partnership agreement. Therefore, the court reasoned, the bank could not argue that the general partner had apparent authority to direct the bank to disburse the funds to a non-partnership account. Id. at 897. As a result, because the bank paid the loan proceeds to an entity other than the borrower, the court concluded that the partnership's note was void for lack of consideration. Id. at 898. Interestingly, Green River rejected the partnership's claim based upon the bank's alleged negligence. Id. at 899. Here, unlike Green River, all funds advanced by the Bank were paid into RNR's account. There is no basis for arguing a failure of consideration. Further, there is no fact in the record that would show that the Bank had actual knowledge or notice of restrictions on the general partner's authority.
Because there is no disputed issue of fact concerning whether the Bank had actual knowledge or notice of restrictions on the general partner's authority to borrow, summary judgment was proper.
AFFIRMED.
MINER and WOLF, JJ., CONCUR.
NOTES
[1] RNR mistakenly argues that section 620.8301(1) has no application to a limited partnership because that section is part of the Florida Revised Uniform Partnership Act, not the Florida Revised Uniform Limited Partnership Act. Section 620.186, however, provides, as follows:

In any case not provided for in this act, the provisions of the Uniform Partnership Act or the Revised Uniform Partnership Act of 1995, as applicable, and the rules of law and equity shall govern.