989 So.2d 1244 (2008)
John and Elaine ROSE and State Farm Insurance Company as subrogee of the Roses, Appellants,
v.
ADT SECURITY SERVICES, INC., Appellees.
No. 1D06-3263.
District Court of Appeal of Florida, First District.
September 11, 2008.
*1245 Guy E. Burnette, Jr. and Jennifer L. Velazco, Tallahassee, for Appellants.
Paul W. Rebein and Scott W. Anderson of Shook, Hardy & Bacon, LLP, Tampa, for Appellees.
*1246 PER CURIAM.
John and Elaine Rose and State Farm Insurance Company appeal a final summary judgment granted in favor of ADT Security Services (ADT), appellee, in their action alleging multiple counts against ADT arising out of the fire loss of the Roses' home. We agree with the trial court that the express terms of the agreement between the Roses and ADT preclude appellants' claims as a matter of law. Accordingly, we affirm the summary judgment in favor of ADT.
For the purposes of determining whether summary judgment was appropriate, the trial court found that the following facts were undisputed. The Roses met with a representative of ADT in early April 2000. At that meeting, the ADT salesman represented that the Roses would never lose their house to a fire and that the alarm and fire detection system would save the lives of the Roses' dogs and family members in the event of a fire. On April 24, 2000, John Rose and ADT entered into a two-page written service agreement in which ADT agreed to install an alarm system and provide security and fire detection services in return for the Roses' quarterly payment of $110.97. The agreement contained various written representations and disclaimers of warranties and liability which became the focus of the case. The appellants do not contest these provisions in the agreement.
On June 17, 2000, the Roses' house caught fire, presumably after being struck by lightning. The ADT smoke alarms in the house failed to transmit a fire alarm signal and the house burned to the ground. State Farm Insurance Company insured the house and its contents. The Roses made claim with State Farm under the insurance policy and State Farm covered the fire losses under the provisions of the policy. Pursuant to the subrogation clause in the policy, State Farm brought suit against ADT alleging claims for breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, fraud in the inducement and deceptive trade practices under section 501.211, Florida Statutes.[1] ADT moved for summary judgment, arguing that the appellants could not state a cause of action for fraud in the inducement because the written agreement between the Roses and ADT expressly contradicted and disclaimed any representations made by the ADT salesperson and, thus, the Roses could not have justifiably relied on the representations. ADT further asserted that the negligence and breach of warranty claims were barred by the clear and unequivocal exculpatory and limitation of liability clauses in the agreement. After a hearing, the trial court entered a lengthy and thoughtful opinion analyzing the issues raised by the motion for summary judgment, ruling that, as a matter of law, the Roses could not state a cause of action against ADT under any theory asserted; and entering final summary judgment for ADT.
"The party moving for summary judgment bears the heavy burden of proving a negative  the nonexistence of a genuine issue of material fact." RNR Invs. Ltd. P'ship. v. Peoples First Cmty. Bank, 812 So.2d 561, 564 (Fla. 1st DCA 2002). "Where the moving party offers evidence to support its claim of the nonexistence of a genuine issue of material fact, the nonmoving party `must demonstrate the existence of such an issue or issues either by *1247 countervailing facts or justifiable inferences from the facts presented.'" Id. at 565 (quoting Fleming v. Peoples First Fin. Sav. & Loan Ass'n, 667 So.2d 273, 274 (Fla. 1st DCA 1995)); see also Holl v. Talcott, 191 So.2d 40, 43-4 (Fla.1966). "The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001).
With respect to the claim alleging fraud in the inducement, we agree with appellants that, as a general rule, summary judgment is not appropriate to resolve a fraud claim under Florida law. "Nevertheless, there are circumstances which will permit summary judgment even where fraud is alleged." Peninsula Yacht Cay Dev. Inc. v. S. Floridabanc Sav. Ass'n, 552 So.2d 1139, 1140 (Fla. 3d DCA 1989).
The essential elements to establish a claim for fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment. Simon v. Celebration Co., 883 So.2d 826, 832 (Fla. 5th DCA 2004). For the purpose of considering summary judgment, the trial court accepted appellants' assertion below that the statements were made by ADT's representative and that those statements were relied upon in entering into the agreement. The central issue here is whether, given the provisions in the agreement, the Roses could have justifiably relied on the statements of ADT's representative.
In examining the concept of justifiable reliance, the Florida Supreme Court has explained:
The question ... is whether the recipient of the misrepresentation is "justified in relying upon its truth." For if the recipient "knows that it [the statement] is false or its falsity is obvious to him," his reliance is improper, and there can be no cause of action for fraudulent misrepresentation.
M/I Schottenstein Homes, Inc. v. Azam, 813 So.2d 91, 94-95 (Fla.2002) (quoting Besett v. Basnett, 389 So.2d 995, 997 (Fla. 1980)) (citations omitted). Notwithstanding oral misrepresentations prior to the making of a contract, a party cannot establish justifiable reliance and "may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So.2d 536, 542-43 (Fla. 5th DCA 2003); see also Aedes Mosquito Control, Inc. v. Springer Equip., Inc., 959 So.2d 1208, 1209 (Fla. 1st DCA 2007)(citing with approval Giallo v. New Piper Aircraft, Inc., 855 So.2d 1273, 1275 (Fla. 4th DCA 2003)(holding that a party could not recover from aircraft dealer for allegedly fraudulent statements that the new avionics system would "enhance the safety of the aircraft" where the subsequent written agreement disclaimed any oral representations or warranties as to the dealer)).
Here, subsequent to the alleged misrepresentations by the ADT representative, Mr. Rose and ADT entered into the subject agreement which contained the following provision in bold-faced capitalized type immediately above Mr. Rose's signature:
CUSTOMER STATES THAT, BEFORE SIGNING THIS AGREEMENT, HE/SHE HAS READ BOTH SIDES OF THIS AGREEMENT AND *1248 UNDERSTANDS ALL TERMS AND CONDITIONS OF BOTH THIS AND THE REVERSE SIDE OF THIS AGREEMENT, IN PARTICULAR, PARAGRAPH 1, LIMITED WARRANTY, AND PARAGRAPH 7, LIMIT OF LIABILITY.
Directly above this paragraph, the agreement contained the following provision in capitalized type:
CUSTOMER ACKNOWLEDGES THAT HE/SHE IS AWARE THAT NO ALARM SYSTEM CAN GUARANTEE PREVENTION OF LOSS, THAT HUMAN ERROR ON THE PART OF ADT OR THE MUNICIPAL AUTHORITIES IS ALWAYS POSSIBLE, AND THAT SIGNALS MAY NOT BE RECEIVED IF THE TRANSMISSION MODE IS CUT, INTERFERED WITH, OR OTHERWISE DAMAGED. THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT. CUSTOMER AGREES THAT ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN THIS AGREEMENT SHALL NOT BE BINDING UPON ANY PARTY, ...
This provision expressly contradicts the oral representations allegedly made by ADT's salesperson. We agree with the trial court that the Roses cannot claim that they justifiably relied on oral representations when the terms of the subsequent written agreement expressly and conspicuously contradict the oral statements. Therefore, the trial court did not err in entering summary judgment in favor of ADT on appellants' fraud in the inducement claim.
With regard to the breach of warranty claims, in Florida "there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract." West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 88 (Fla.1976). This court recognized in Cunningham v. General Motors Corp., 561 So.2d 656, 658-59 (Fla. 1st DCA 1990), that "[t]he doctrine of strict liability evolved as a vehicle for recovery for personal injury or property damage resulting from use of a product, when, due to lack of privity with the manufacturer, the injured user has no recourse under traditional warranty theory grounded in contract." However, "[i]f there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains." West, 336 So.2d at 91.
In the case before us, there was a contractual relationship between the Roses and ADT. Therefore, appellants' warranty claims sound in contract rather than in tort. Accordingly, we apply the Florida Uniform Commercial Code ("UCC"). It is clear under Florida law that "[t]he [UCC] contemplates that a seller may disclaim warranties as long as the buyer reasonably understands this is being done." Knipp v. Weinbaum, 351 So.2d 1081, 1084-85 (Fla. 3d DCA 1977). Section 672.316(2), Florida Statutes (1999), instructs that, "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous." The disclaimer in the agreement before us fully complies with the law governing warranty disclaimers. It specifically disclaims both the "implied *1249 warranties of merchantability and fitness" and is conspicuous, having been printed in bold, capital letters in the section of the agreement entitled "General Terms and Conditions." Thus, we agree with the trial court that, as a matter of law, ADT effectively disclaimed any and all warranties arising from the contract.
As to the negligence claim, the agreement expressly provides in capitalized type, "UNDER NO CIRCUMSTANCES, SHALL ADT BE LIABLE TO THE CUSTOMER [...] FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE [...] AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY BY ADT, THE NEGLIGENCE OF ADT, OR OTHERWISE." While exculpatory clauses that purport to release a party from liability for its own negligence are disfavored, these clauses are enforceable, as long as the language of such clauses is "so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away." Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co., 580 So.2d 628, 634 (Fla. 1st DCA 1991). Florida courts also recognize, however, that a party "should not be permitted to exempt himself from responsibility to [another party] for damages resulting from [that party]'s negligence if such an exemption effectively immunizes the [party] from liability for breach of a positive statutory duty to protect the well-being of the [other party]." John's Pass Seafood Co. v. Weber, 369 So.2d 616, 618 (Fla. 2d DCA 1979).
Appellants argue that ADT's actions violated numerous statutes and administrative rules. As a result, appellants assert that this case fits within the exception created in John's Pass and that, therefore, ADT's exculpatory clause was unenforceable. In support of its motion for summary judgment, ADT came forward with evidence that demonstrated that it did not violate any statutes that created a positive duty to protect the well-being of the homeowner. Upon this showing by ADT, the burden then shifted to the appellants, who failed to produce competent evidence to fit this case within the John's Pass exception. See RNR Invs. Ltd. P'ship, 812 So.2d at 565. Appellants rely on the deposition and report of their expert, Jeffrey Zwirn, to support the contention that the facts here establish that the John's Pass exception applies. Neither document constitutes admissible evidence, however. First, the record reflects that the parties jointly stipulated to exclude Zwirn's deposition. Second, the report is a letter written from Zwirn to appellants' counsel, which, as the trial court correctly determined, constitutes inadmissible hearsay. See § 90.802, Fla. Stat. (2005). A trial court cannot consider inadmissible evidence in determining the disposition of a motion for summary judgment. Dykes v. Quincy Telephone Co., 539 So.2d 503, 504 (Fla. 1st DCA 1989). Accordingly, the exculpatory clauses here which limit ADT's liability for negligent acts will be upheld if the terms of such clauses are clear and unequivocal. We agree with the trial court that the terms contained in the parties' agreement are clear and unequivocal. From the above exculpatory language, "an ordinary and knowledgeable person" would understand this provision to mean that appellee was limiting its liability for any negligent acts. Southworth & McGill, P.A., 580 So.2d at 634. Accordingly, the trial court did not err in granting summary judgment on appellants' negligence *1250 claim.[2]
We affirm the final summary judgment.
VAN NORTWICK, LEWIS, AND ROBERTS, JJ., concur.
NOTES
[1] While appellants initially alleged a claim for deceptive trade practices under section 501.211, Florida Statutes, appellants conceded that summary judgment was proper for this claim.
[2] Because of our holdings on the other issues on appeal, it is unnecessary to address the issue relating to the subrogation waiver.