BROOKE DRYWALL OF COLUMBIA,
INC., Respondent,

v.

BUILDING CONSTRUCTION
ENTERPRISES, INC., et
al., Appellants.

No. WD 73355.

Missouri Court of Appeals,
Western District.

Nov. 8, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 20, 2011.

As Modified Dec. 20, 2011.

Application for Transfer Denied
April 3, 2012.

Danne W. Webb and Amy J. Tillery, Kansas City, MO, for Respondent.

Scott C. Long and Burke D. Robinson, Overland Park, KS, for Appellant Building Construction Enterprises, Inc.

Robert M. Pitkin, Lawrence Lerner, and Greta A. McMorris, Kansas City, MO, for Appellant Hartford Fire Insurance Co.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is a surety bond case. The surety guaranteed payments due from the contractor to its subcontractors. Under the agreement between the contractor and one of its subcontractors, attorneys' fees were due the "prevailing party" in any litigation arising from the agreement. A dispute arose over payments to the subcontractor. After lengthy litigation, the contractor and the surety settled with the subcontractor for the entire principal sum in dispute. The parties then submitted to the court the issues of whether the subcontractor was owed attorneys' fees and/or interest on the principal sum.

The primary issues here are whether the subcontractor was the "prevailing party," and, if it was, whether the surety is liable for attorneys' fees, given that the bond did not specifically mention them. The subcontractor's entitlement to interest on the principal amount is also at issue. We hold that, given that the parties submitted the interest issue to the court and the subcontractor prevailed, the subcontractor was the prevailing party and was therefore entitled to attorneys' fees pursuant to its agreement with the contractor. Furthermore, the language of the surety's bond was broad enough to cover all "pay-

ments due" from the contractor to its subcontractors, and therefore the surety was liable for the subcontractor's attorneys' fees. The subcontractor's agreement with the contractor provided that the former was entitled to interest on the principal amount due. Accordingly, we affirm.

## Facts and Procedural Background[1]

■ Appellant Building Construction Enterprises, Inc. ("Contractor") submitted the winning bid for a construction project at the University of Missouri, Rolla, which is now called the Missouri University of Science & Technology ("University"). Contractor and University entered into a contract for the project ("University agreement").

Contractor obtained a surety bond ("the bond") for the University construction project from Appellant Hartford Fire Insurance Company ("Surety"). The bond provides as follows:

if [Contractor] shall faithfully perform and fulfill all the covenants, agreements, terms, conditions, requirements or undertakings of [the University agreement] and promptly make payment for materials incorporated, consumed or used in connection with the work set forth in [the University agreement] . . . and all insurance premiums, both compensation and all other kinds of insurance, on said work, and for all labor performed on such work, whether by subcontractor or otherwise, at not less than the prevailing hourly rate of wages for work of a similar character (exclusive of maintenance work) in the locality in which the work is performed and not less than the prevailing hourly rate of wages for legal holiday and overtime work, as provided for in [the University

---

1. On appeal from a court-tried case, we view the facts in the light most favorable to the court's judgment. *K.M.D. v. Alosi*, 324 S.W.3d 477, 478 n. 1 (Mo.App. W.D.2010).

agreement] and in any and all duly authorized modifications of [the University agreement] that may be hereafter made, with or without notice to the Surety, then, this obligation shall be void and of no effect, but it is expressly understood that if [Contractor] should make default in or should fail to strictly, faithfully and efficiently do, perform and comply with any or more of the covenants, agreements, terms, conditions, requirements or undertakings, as specified in or by the terms of [the University agreement], then this obligation shall be valid and binding upon [Contractor and Surety] and this bond shall remain in full force and effect; and the same may be sued on at the instance of any material man, laborer, mechanic, subcontractor, individual, or otherwise to whom such payment is due, in the name of the [University], to the use of any such person.

Contractor then entered into a contract ("the subcontract") with Respondent Brooke Drywall of Columbia, Inc. ("Subcontractor") for the performance of part of the work for the University construction project. The relevant portions of the subcontract are as follows:

12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the [University]. If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.

. . .

15.2 Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

. . .

Article 15.6

In the event the parties hereto elect to engage the services of an attorney with respect to any dispute arising out of, resulting from or in connection with the performance or non-performance of construction relating to the [University] Project, the party prevailing with respect to any such dispute, in addition to all other damages owing to it, shall also be paid by the non-prevailing party all attorney fees, costs and expenses, including those of any consultants or experts, sustained, suffered or incurred in any manner with respect to such dispute.

Due to forces beyond the parties' control (a worldwide shortage of steel), Subcontractor did not complete its portion of the subcontract on time, nor did Contractor complete the global project on time. University withheld payment from Contractor, and Contractor withheld payment from Subcontractor. In the spring of 2005, Subcontractor made demand for final payment.

Subcontractor sued Contractor and Surety for payment of the principal amount due ($300,000), plus interest and attorneys' fees. After lengthy litigation, the parties settled for the entire principal amount but reserved the issues of interest and attorneys' fees for the circuit court to decide. The circuit court found that Contractor and Surety were both liable for

interest and attorneys' fees and entered judgment accordingly. This appeal follows.

## Standard of Review

As in any court-tried case, "we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it misstates or misapplies the law, or it goes against the weight of the evidence." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo.App. W.D.2010). As always, "[q]uestions of law such as contract interpretation are reviewed de novo." *Reece & Nichols Realtors v. Zoll*, 201 S.W.3d 516, 518 (Mo.App. W.D.2006).

## Legal Analysis

### I. Whether Subcontractor was entitled to interest on the principal amount

Surety and Contractor argue that the circuit court erred in awarding Subcontractor "prejudgment interest" in that the parties settled for the principal amount and that there was therefore no judgment upon which prejudgment interest could be based. We disagree.

Subcontractor's entitlement to interest on the principal amount springs from the subcontract itself and not from any prejudgment interest statute.[2] Thus, Surety and Contractor's argument that "prejudgment interest" should not apply is inapposite, for prejudgment interest is not even at issue.

In their Reply brief, Surety and Contractor argue that, under the subcontract, interest on the principal amount did not run until University paid Contractor for the subject work, and that Contractor did not receive that payment until University settled at the same time the parties settled here. But that argument is contrary to the plain terms of the subcontract.

The subcontract provides that "[p]ayments due and unpaid ... shall bear interest *from the date payment is due*." (Emphasis added.) A payment is "due" under the subcontract under the following conditions:

> Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed ... and the Contractor has received payment from the [University]. If, for any cause which is not the fault of the Subcontractor ... the Contractor does not receive timely payment ... final payment to the Subcontractor shall be made upon demand.

Thus, where, as here, University did not pay Contractor for the subject work, three essential elements were necessary for the payment of the principal amount to be "due": (1) Subcontractor's work was fully performed; (2) Contractor's non-receipt of payment from University was for a cause not the fault of Subcontractor; and (3) Subcontractor made demand for payment. Surety and Contractor concede that Subcontractor had fully performed, that the delay caused by the steel shortage was not Subcontractor's fault, and that Subcontractor made demand for payment in the spring of 2005. Therefore, payment was "due" Subcontractor in the spring of 2005, and interest ran from that date pursuant to the subcontract.

---

2. Surety and Contractor argue that the parties stipulated that Subcontractor was entitled to statutory prejudgment interest *upon a verdict* and that no "verdict" for the principal amount exists. However, we do not view the stipulation that Subcontractor *is* entitled to statutory prejudgment interest upon a verdict as a concession that Subcontractor *is not* entitled to interest pursuant to the subcontract.

Accordingly, the circuit court did not err in awarding Subcontractor interest on the principal amount. Point denied.

## II. Whether Subcontractor was the "party prevailing" so as to trigger the subcontract's attorneys' fee provision

■ Surety and Contractor argue that the circuit court erred in awarding Subcontractor attorneys' fees in that Subcontractor was not the "party prevailing" under the subcontract because the parties settled for the principal amount, and, in order for one party to "prevail," an issue must be litigated. We disagree.

■ Attorneys' fees are not generally recoverable in the United States, but they may become so if a statute or the parties' contract so provides. *David Ranken, Jr. Technical Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991). The issue here is whether Subcontractor had a contractual right to attorneys' fees.

■ The subcontract provides that, in any litigation arising out of the University project, "the party prevailing with respect to any such dispute ... shall ... be paid by the non-prevailing party all attorney fees." A "prevailing party" is one who obtains a judgment from the court, regardless of the amount of damages. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting BLACK'S LAW DICTIONARY (7th ed.1999)). A party need only obtain "some relief" from the court in order to be deemed the "prevailing party." *Id.*

Here, although the parties settled for the principal amount, they litigated the issue of interest.[3] Subcontractor prevailed on that issue and obtained relief from the court: a judgment for $136,400.68. That is sufficient to render Subcontractor the "prevailing party" in this matter, thus triggering Subcontractor's contractual right to attorneys' fees.[4] *See id.* We need not decide whether obtaining a very favorable settlement[5] renders one the "prevailing party," for Subcontractor's success with respect to the litigated issue of interest is sufficient to make it "the prevailing party." Point denied.

## III. Whether Surety is liable for attorneys' fees

■ Surety argues that the circuit court erred in awarding, as against it, attorneys' fees in that its liability is defined by the bond, and the bond does not mention attorneys' fees. We disagree.

The parties argue vigorously over whether a surety's liability is entirely coextensive with that of the principal or whether the extent of the surety's liability is confined to the terms of the bond. *Compare City of Kansas City ex rel. Jennings v. Integon Indem. Corp.*, 857 S.W.2d 233, 236 (Mo.App. W.D.1993) ("General principles of surety law dictate that the liability of a surety is coextensive with that of its principal."); *with City of Independence ex rel. Briggs v. Kerr Constr. Paving Co.*, 957 S.W.2d 315, 324 (Mo.App. W.D.1997) ("While it is true that a surety's liability is coextensive with its principal, the obligation of a surety is limited to the terms of

---

3. Subcontractor argues that it prevailed with respect to the attorneys' fee issue itself. But that argument is circular: Subcontractor cannot be entitled to attorneys' fees on the basis of its entitlement to attorneys' fees.

4. We note that Surety and Contractor have appealed the issue of Subcontractor's *entitle-*

ment to attorneys' fees and that they have not appealed the *amount* of attorneys' fees.

5. In the settlement, Subcontractor received 100% of the principal amount in dispute, and the parties expressly reserved the right to argue entitlement to attorneys' fees and interest.

its contract."); *and Marcomb v. Hartford Fire Ins. Co.,* 934 S.W.2d 17, 20 (Mo.App. W.D.1996).

However, we need not address that issue, for, in this case, the terms of the bond are broad enough to cover payment of attorneys' fees owed pursuant to the principal's subcontract. The bond provides that

> *if* [Contractor] shall faithfully perform and fulfill *all* the covenants, agreements, terms, conditions, requirements or undertakings of [the University agreement] *and* promptly make payment for materials incorporated, consumed or used in connection with the work set forth in [the University agreement] . . . and all insurance premiums, both compensation and all other kinds of insurance, on said work, and for all labor performed on such work . . . *then,* this obligation shall be void and of no effect, *but*
>
> it is expressly understood that *if* [Contractor] should make default in or should fail to strictly, faithfully and efficiently do, perform and comply with *any or more* of the covenants, agreements, terms, conditions, requirements or undertakings, as specified in or by the terms of [the University agreement], *then* this obligation shall be valid and binding upon [Contractor and Surety] and this bond shall remain in full force and effect; *and*
>
> the same may be sued on at the instance of any . . . subcontractor . . . *to whom such payment is due* . . . .

(Emphasis and paragraphs added.)

Surety argues that the bond guarantees *only* payments for "materials, insurance premiums, and labor." But that is not what the bond states. The bond states that it shall be void and of no effect *if* Contractor fully performs *all* of its obligations under the University agreement *and* promptly pays for all material, insurance premiums, and labor. If the bond only guaranteed payment for "material, insurance premiums, and labor," there would be no need for the first clause addressing when the bond is void. The bond then says that *if* Contractor fails to comply with *any* of the covenants contained in the University agreement, *then* the bond will remain in effect, *and* it may be sued upon by any subcontractor "whom such payment is due."

Surety does not argue that the Contractor had no obligation under the University agreement to pay Subcontractor's attorneys' fees. Stated another way, Surety does not contest that the University agreement contained a covenant whereby Contractor agreed to comply with the terms of its own subcontracts including attorneys' fees.[6] Nor does Surety challenge the sufficiency of the evidence. We decided above that Contractor failed to comply with the subcontract, both in failing to timely pay Subcontractor for its labor and in denying Subcontractor payments due in the form of interest and attorneys' fees. Therefore, the only remaining question is whether attorneys' fees qualify as "such payment . . . due" Subcontractor.

"Such" is apparently referring to payment that is due as a consequence of Contractor's failure to perform under the University agreement. As noted, we have already decided that attorneys' fees were "due" Subcontractor from Contractor and that Contractor failed to perform that obligation. Attorneys' fees are also "pay-

---

**6.** In fact, at oral argument, counsel for Surety stated that he would be surprised if the University agreement did not contain such a clause because such clauses are typical in contracts between general contractors and owners. The University agreement is not part of the record on appeal.

ments." A payment is the performance of an obligation, usually by the delivery of money. BLACK'S LAW DICTIONARY (7th ed.1999). Here, Subcontractor bargained for the right to impose upon Contractor the obligation to pay its attorneys' fees, and there is no question that the obligation was meant to be enforced by the delivery of money. Accordingly, we hold that attorneys' fees were "such payment ... due" Subcontractor and that the bond therefore guaranteed them. *Cf. Marcomb*, 934 S.W.2d at 20 (holding that attorneys' fees do not qualify as a "loss").

Surety cites numerous cases where bonds guaranteeing payment of *only* "materials and labor," or other specific payments, were held not to cover attorneys' fees. *See, e.g., Knecht, Inc. v. United Pac. Ins. Co.*, 860 F.2d 74, 80 (3d Cir.1988) (so holding when the bond applied to nonpayment for "work or labor done or performed or material furnished"); *Dean v. Seco Elec. Co.*, 35 Ohio St.3d 203, 519 N.E.2d 837, 840 (1988) (so holding when the bond applied to "debts incurred for labor and materials only"); *Martin v. Hartford Accident & Indem. Co.*, 68 N.C.App. 534, 316 S.E.2d 126, 128–29 (1984) (so holding with respect to a bond guaranteeing the purchase price of livestock); *Faulkner Concrete Pipe Co. v. U.S. Fid. & Guar. Co.*, 218 So.2d 1, 2 (Miss. 1968) (so holding with respect to a bond guaranteeing "payments to all persons supplying labor or material therefore").

But, in this case, although the bond refers to materials and labor, it also states that it will remain in effect unless Contractor performs *all* of its obligations. A bond guaranteeing *only* payments for "materials and labor" is narrower than one guaranteeing "payment ... due" for a breach of *any* of the contractor's obligations, which

is what we have here. Surety could have defined the terms of its bond more narrowly, but it chose not to do so.[7] Since the terms of its bond are broad enough to cover attorneys' fees, Surety's argument fails. Point denied.

### Conclusion

Under the subcontract, Subcontractor is entitled to interest on the principal amount because it performed the work, the delay was not its fault, and it demanded payment. Subcontractor is entitled to attorneys' fees pursuant to the subcontract because the parties litigated the interest issue, and Subcontractor prevailed. Surety is liable for attorneys' fees because the Contractor is liable for the Subcontractor's attorneys' fees and that obligation falls within that broad language of the bond. Accordingly, we affirm.

JAMES M. SMART, JR., and GARY D. WITT, Judges, concur.

---

7. Surety stated at oral argument that University, not it, dictated the terms of the bond. To the extent Surety, a sophisticated party in the business of issuing surety bonds, is arguing that it should not be held to the terms of the bond it signed, we reject the argument.