# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2943

_____

Owners Insurance Company, an Ohio corporation, as assignee of Lindberg
Waterproofing, Inc.

*Plaintiff - Appellant*

Stark Truss Company, Inc.

*Intervenor Plaintiff*

v.

Fidelity and Deposit Company of Maryland

*Defendant - Appellee*

_____

No. 21-2950

_____

Owners Insurance Company, an Ohio corporation, as assignee of Lindberg
Waterproofing, Inc.

*Plaintiff*

Stark Truss Company, Inc.

*Intervenor Plaintiff - Appellant*

v.

Fidelity and Deposit Company of Maryland

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: June 14, 2022
Filed: July 22, 2022
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

This case is about a construction project gone wrong. After disputes arose between a general contractor and two of its subcontractors, an arbitrator awarded the subcontractors money for the labor and material they had provided the general contractor along with associated costs, attorneys' fees, interest, and other sums. The general contractor declared bankruptcy before paying up, and the surety company that issued a bond guaranteeing the subcontractors would be paid tendered amounts representing only the part of the awards that compensated for labor and material (and some interest). But the subcontractors (or in one case, the subcontractor's assignee) wanted the whole of the awards and sued in federal court to get it. The district court sided with the surety and granted it summary judgment. We hold that the court erred, and so we reverse and remand.

BCC Partners, LLC, hired Ben F. Blanton Construction, Inc., to build luxury apartments in the St. Louis area. As part of their agreement, Blanton promised to provide BCC a payment bond that would protect BCC in case Blanton failed to pay its subcontractors and they resorted to asserting liens on BCC's property. *See Frank Powell Lumber Co. v. Fed. Ins. Co.*, 817 S.W.2d 648, 652 (Mo. Ct. App. 1991). So Blanton obtained a nearly $25 million bond from Fidelity and Deposit Company of Maryland, which we will call F&D. The bond says that "if [Blanton] shall promptly make payment to all claimants as hereafter defined, for all . . . labor and material used

or reasonably required for use in the performance of" Blanton's contract with BCC, then F&D's surety obligation "shall be void; otherwise, it shall remain in full force and effect." The bond defined a claimant to include "one having a direct contract with" Blanton "for labor, material, or both, used or reasonably required for use in the" project. The bond then said that Blanton and F&D agreed with BCC "that every claimant as herein defined, who has not been paid in full, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon."

There are two subcontractors relevant here. One is Stark Truss Company, Inc., which agreed to provide roof and wall trusses and other material for the project. Blanton in turn promised that if Stark Truss had to pursue a claim against Blanton to enforce their agreement, then Stark Truss would be entitled to recover reasonable attorneys' fees, costs, and other expenses. The other is Lindberg Waterproofing, Inc., which agreed to provide waterproofing work on the project. The agreement between Blanton and Lindberg provided that, in any dispute related to their agreement, "the prevailing party shall be entitled to recover its attorneys fees, expert fees, and costs from the non-prevailing party." These two subcontractors asserted that Blanton had failed to pay for labor and material provided for the project, while Blanton maintained that the labor and material were deficient or incomplete.

Arbitration proceedings were commenced to resolve these disputes, and an arbitration panel found in favor of the subcontractors, awarding Stark Truss nearly $125,000 for labor and material it had provided and over $150,000 in costs, attorneys' fees, and interest. The panel also awarded Lindberg $27,000 in labor and material and over $225,000 in costs, attorneys' fees, and interest.

Instead of paying these awards, Blanton filed for bankruptcy protection. F&D tendered payments to Lindberg and Stark Truss in the amounts that the arbitration panel awarded for labor and material, plus some interest, but it refused to pay the awards for costs, attorneys' fees, and the full amount of interest on the ground that the

-3-

payment bond did not obligate it to do so. Owners Insurance Company, as assignee of Lindberg's interest in recovering these amounts, sued F&D, arguing that it had breached the terms of the payment bond. Stark Truss intervened and asserted an identical claim on its own behalf. After all the parties moved for summary judgment, the district court granted F&D's motions.

"We review the district court's resolution of cross-motions for summary judgment *de novo*." *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022). Missouri substantive law applies in this diversity case. *See id.* In Missouri, a "surety is not to be held beyond the terms of his contract; he is bound by his agreement and nothing more." *See Jerry Bennett Masonry, Inc. v. Crossland Constr. Co.*, 171 S.W.3d 81, 96 (Mo. Ct. App. 2005) (quoting *State ex rel. S. Sur. Co. of N.Y. v. Haid*, 49 S.W.2d 41, 42 (Mo. 1932)). As we said, the payment bond in this case provides that Blanton shall promptly pay subcontractors for all "labor and material" supplied for the construction of the apartments, but if it does not, then the subcontractors may sue F&D on the payment bond and "prosecute the suit to final judgment for such sum or sums as may be justly due." The question in this case reduces to this: whether "sums as may be justly due" include only amounts for labor and material or whether that phrase also includes arbitration costs, attorneys' fees, and interest.

In Missouri, "[t]he cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Safeco Ins. Co. of Ill. v. Palazzolo*, 15 F.4th 1204, 1207 (8th Cir. 2021) (quoting *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995)). We conclude that the parties intended that the phrase "sums as may be justly due" includes all amounts that a subcontractor would be entitled to receive under its contract with Blanton.

To begin with, we think that the district court and F&D focus on the wrong part of the payment bond in concluding that the bond obligates F&D to pay only for labor and material. It is true that the bond contains a paragraph that explains that its

obligations will become void if Blanton "promptly" pays its subcontractors for all "labor and material used or reasonably required for use" on the project. But as Stark Truss persuasively argues in its brief, the district court and F&D are confusing the paragraph that describes the condition that voids F&D's obligation with the paragraph that details the extent of F&D's obligation should Blanton fail to pay for labor or material promptly. It would be odd to include terms like costs, attorneys' fees, and interest in the paragraph describing the condition since there are probably few, if any, situations in which a general contractor promptly pays a subcontractor for labor and material and yet also generates associated costs, attorneys' fees, and interest. Those amounts typically do not arise until after a general contractor has failed to make prompt payment for the underlying labor or material.

So we agree with Stark Truss that a better place to find the scope of F&D's obligations is the paragraph that discusses what happens when a subcontractor "has not been paid in full." According to this paragraph, the subcontractor in that case may receive "such sum or sums as may be justly due." Notice that it does not say that the subcontractor may receive such sums as may be due for labor and material, even though the two paragraphs just before expressly mention those items. If the bond limited F&D's obligations to paying only for labor and material, we think it would have said so here. We have noted, albeit in interpreting Minnesota law, that when a contract uses different language in nearby clauses addressing similar issues, the differing language evinces the parties' "clear intention" to convey a different meaning. *See Larson v. Nationwide Agribusiness Ins. Co.*, 739 F.3d 1143, 1148 (8th Cir. 2014). We do not see why that inference would be any different in Missouri.

We also find it significant that the language the payment bond uses is freighted with a legal meaning acquired over the years in contexts like the present one. The phrase "sum or sums as may be justly due" appears to derive from the Miller Act, a federal law that requires government contractors on certain federal projects to provide payment bonds for the protection of those supplying labor and material for the project. *See F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 118

(1974); *see also* 40 U.S.C. §§ 3131(b)(2), 3133(b)(1). Before Congress updated the wording of that statute in 2002, which was not intended to work a substantive change, *see Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 267 F. Supp. 3d 205, 213 (D.D.C. 2017), the Miller Act provided that a subcontractor could sue on a payment bond after failing to receive payment for labor or material and "prosecute said action to final execution and judgment for the sum or sums justly due him." *See* 40 U.S.C. § 270b(a) (2001).

Several Miller Act cases have presented issues like the one presented here—whether the phrase "justly due" includes things like costs and attorneys' fees. And in those cases, courts consistently held that, though the Miller Act did not explicitly provide for the recovery of attorneys' fees or interest, subcontractors were nonetheless entitled to those items if the underlying contract between the subcontractor and the general contractor permitted their recovery. *See, e.g.*, *U.S. ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 336 (4th Cir. 1996) (per curiam) (collecting cases).

Our court has reached the same conclusion. *See D&L Constr. Co. v. Triangle Elec. Supply Co.*, 332 F.2d 1009 (8th Cir. 1964). That case dealt with a bond that was issued under the Capehart Act, a federal law that "provide[d] urgently needed housing for military personnel on Government property" that, like the Miller Act, required the issuance of payment bonds in some circumstances. *See Cont'l Cas. Co. v. U.S. ex rel. Robertson Lumber Co.*, 305 F.2d 794, 797 (8th Cir. 1962). We described the bond in *Triangle*, though it was required by the Capehart Act, as being "in substance the same as that required on Miller Act projects" in that it allowed subcontractors to seek "sums as may be justly due," and so it appeared the bond's drafters had copied Miller Act phraseology. *See Triangle*, 332 F.2d at 1011–12. We explained that the categories of expenses "justly due" a subcontractor will "vary with the facts and circumstances of individual cases" depending on the terms of the subcontract. *See id.* at 1012. And given that the subcontract there entitled the subcontractor to interest and attorneys' fees, and so were in a sense part of "the purchase price of the materials," they were

"sums justly due" the subcontractor that the bond obligated the surety to pay. *See id.* at 1013.

Despite the close fit between the bond language in *Triangle* and the bond language here, the district court concluded, and F&D argues, that *Triangle* was "not dispositive of the issues presented" in this case and that Owners's and Stark Truss's reliance on *Triangle* was "unavailing" for three reasons. First, courts have said that the Miller Act "is highly remedial in nature" and so "should receive a liberal construction to effectuate its protective purposes." *See U.S. ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). Second, the Miller Act provides a federal cause of action, and the scope of the remedy and the substance of the rights created are a matter of federal law, not state law. *See F.D. Rich*, 417 U.S. at 127. And third, Miller Act bonds are designed to protect subcontractors that furnish labor or material on federal projects, *see Triangle*, 332 F.2d at 1012, while common law bonds like the one involved here protect property owners from a subcontractor's liens, even if subcontractors are incidentally benefitted as well. *See Frank Powell Lumber*, 817 S.W.2d at 650, 652.

Even if we were to accept all three of those propositions as true, we would reject the conclusion that *Triangle* is inapposite because that conclusion gives short shrift to the ultimate goal of contract interpretation—ascertaining the intention of the parties. Here, the parties selected language loaded with meaning in the world of construction bonds. That meaning may have arisen in a public-bond context, but we think it's a fair inference that the parties' deliberate use of that language in a private bond carried with it that language's meaning in its original setting. The phrase "sums justly due" had become a term of art. If the parties intended F&D's obligation to be different from what it would be in the public-bond context, then we think they would not have agreed to a phrase with an established legal meaning but would have chosen different language altogether.

In determining the meaning of a contract and the parties' intentions, we also consider "the context of the [agreement] as a whole." *See Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015 (8th Cir. 2016). With that in mind, we believe that the payment bond offers an additional clue that the parties intended the phrase "sums as may be justly due" to include attorneys' fees, costs, interest, and other items called for in the subcontractors' agreements with Blanton. It says, "For projects located in the State of Connecticut, [F&D] is liable for and is obliged to pay any interest, costs, penalties or attorneys' fees imposed upon the Principal under any provisions of Connecticut Public Act 99-153, entitled 'An Act Concerning Fairness in Financing in the Construction Industry.'" The Connecticut statute in question says, "No surety shall be obligated to include in the payment of a bond issued by such surety any interest, costs, penalties or attorneys' fees imposed on the principal of such bond under [certain Connecticut statutory sections and subsections] unless the terms of the bond expressly reference said sections and subsection and state that such surety is obligated to pay such interest, costs, penalties or attorneys' fees." *See* Conn. Gen. Stat. § 42-158o. In other words, the surety is not bound to pay those expenses unless the bond expressly says the surety will do so and expressly cites the relevant statute. So the payment bond here was meant to satisfy § 42-158o and obligate F&D to pay for interest, costs, penalties, and attorneys' fees in disputes involving Connecticut projects.

Why would F&D want to satisfy the Connecticut statute if it did not think that it was simply clarifying an obligation it had already assumed in its bond? Corporations no doubt sometimes act altruistically but why would Connecticut projects be somehow special to F&D? F&D cannot explain why it might favor Connecticut projects, and the record reveals no reason why it might be inclined to do so: It is not domiciled in Connecticut, and its corporate disclosure statement shows no connection between F&D's parent companies and Connecticut. The only reason for the inclusion of the clause that comes readily to mind is that F&D wanted to make the coverage of bonds involving projects in Connecticut congruent with the coverage that its bonds afford in other states. In other words, the liability was already in the bond.

The district court addressed this clause but held that it was irrelevant because the project here was located in Missouri and not Connecticut. But no one is arguing that the clause should apply to the situation at hand; the point is that the clause gives us a clue that F&D thought it had elsewhere in the bond assumed an obligation to pay interest, costs, and attorneys' fees. That is the only sensible way to explain why a reference to Connecticut law would appear in the bond.

In support of a different reading of the bond, the district court and F&D rely on *Brooke Drywall of Columbia, Inc. v. Bldg. Constr. Enters., Inc.*, 361 S.W.3d 22 (Mo. Ct. App. 2011). That case also involved a surety bond and a contest over whether a subcontractor was entitled to attorneys' fees in its dispute with the general contractor and surety. *See id.* at 24. The court held that the subcontractor was entitled to attorneys' fees and rejected the surety's contention that the bond obligated it to pay only for material, labor, and insurance premiums. In reaching that determination, the court pointed out that the bond required the general contractor to perform all its obligations under its contract with the property owner, commonly called the prime contract, and the prime contract required the general contractor to comply with the terms of its subcontracts. The subcontract at issue, in turn, provided that the prevailing party in a dispute would recover attorneys' fees. *See id.* at 25, 28–29. Important for our purposes, the *Brooke* court distinguished the bond at issue there from other bonds that were limited only to labor and materials, saying, "although the bond refers to materials and labor, it also states that it will remain in effect unless Contractor performs *all* of its obligations. A bond guaranteeing *only* payments for 'materials and labor' is narrower than one guaranteeing 'payment . . . due' for a breach of *any* of the contractor's obligations, which is what we have here." *See id.* at 29.

The district court and F&D say that the bond here does not require Blanton to perform all its obligations under the prime contract. Further, they point out, the prime contract does not obligate Blanton to perform the terms of its subcontracts. As a result, the district court and F&D say that the bond here resembles the kind of bond

that the *Brooke* court expressly distinguished in reaching its conclusion that the subcontractor there was owed attorneys' fees.

We think they read too much into *Brooke*. The *Brooke* court did not purport to hold that the only way a subcontractor could recover attorneys' fees on a payment bond that didn't expressly mention them would be for the bond to obligate the general contractor to fulfill all its obligations under a prime contract, which in turn would require the general contractor to fulfill its obligations under its subcontracts. Those predicates were sufficient to accomplish that result, but nowhere did the *Brooke* court say they were necessary.

Another way to accomplish this result would be for the bond to say that subcontractors may recover sums "justly due" in a dispute with a contractor, as the bond here says. As we have already explained, that phrase has been held to include attorneys' fees and other items called for in the relevant subcontract. The bond in *Brooke* did not include this "justly due" language nor the other indicators we've identified as present here that suggest an intent by the surety to pay for things like attorneys' fees, such as a provision similar to the Connecticut clause or a structure suggesting the surety's payment obligations extended beyond the condition that voided its obligations. In fact, the bond in *Brooke* just said that a subcontractor or anyone else "to whom such payment is due" could sue on the bond. *See Brooke*, 361 S.W.3d at 25. In short, the *Brooke* court dealt with a completely different bond.

We also find little guidance in the cases that the *Brooke* court relied on. *See Knecht, Inc. v. United Pac. Ins. Co.*, 860 F.2d 74 (3d Cir. 1988); *Dean v. Seco Elec. Co.*, 519 N.E.2d 837 (Ohio 1988). The district court found these cases particularly "instructive" because they involved bonds more closely resembling the one we deal with here. But as Owners and Stark Truss explain, neither *Knecht* nor *Dean* mentions whether the underlying contract between the general contractor and the subcontractor called for an award of costs or attorneys' fees. At most, those cases merely stand for the proposition that inclusion of the phrase "sums as may be justly due" does not, on

-10-

its own, necessarily mean that the subcontractor can recover costs and attorneys' fees. But no one is arguing that here; the argument is that determining the sums "justly due" requires a look at the parties' underlying subcontract, and if that agreement provides for the recovery of items like costs and attorneys' fees, then those items become justly due the subcontractor. To the extent F&D has identified one appellate decision that expressly declined to look to the underlying subcontract to determine the sums justly due, *see J.C. Snavely & Sons, Inc. v. Web M&E, Inc.*, 594 A.2d 333 (Pa. Super. Ct. 1991), we are more persuaded by the numerous cases that the court in *Snavely* recognized as holding to the contrary, including our own decision in *Triangle*. *See id.* at 336 n.2.

We therefore hold that the bond here obligates F&D to pay not only for labor and material but also for other related items to which Stark Truss's and Lindberg's subcontracts entitle them (or their assignees). We leave it to the district court on remand to determine those items and their amounts in the first instance. We also leave it for the district court to determine in the first instance whether F&D should be allowed to conduct additional discovery.

Reversed and remanded.

_____

-11-